<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| THOMAS & BETTS CORP., | : | |
| Plaintiff, | : | Hon. Stanley R. Chesler |
| | : | Civ. No. 01-4677 |
| v. | : | |
| RICHARDS MANUFACTURING COMPANY, et al., | : | |
| | : | **OPINION** |
| Defendants. | : | |

**<u>CHESLER, District Judge</u>**

**I.   INTRODUCTION**

This matter comes before the Court on the motion of defendant Glenn Luzzi for summary judgment on Thomas & Betts Corporation's ("T&B") fraud claim against him. [Docket Entry No. 97.] For the reasons that set forth below, the motion will be **GRANTED**.

**II.   BACKGROUND**

The background allegation in this case are well known to the parties and will not be repeated here. T&B's fraud claim asserts that it was defrauded into executing a document that released Mr. Luzzi, a former T&B employee, from his non-competition agreement with T&B. T&B alleges that it was defrauded into executing the document because Mr. Luzzi, in requesting the release, failed to disclose that he intended to work for his new employer to develop competing products. T&B asserts that by virtue of his employment relationship with it, he was obligated to disclose this information in connection with this request and that the failure to do so

1

constitutes legal fraud.

Luzzi argues in support of this motion that (1) he did disclose to T&B's New Jersey General Manager and the Manager of Human Resources that he intended to develop a competing product; (2) it should have been obvious to the T&B manager that he intended to work for a competitor – otherwise he would not need to have been released from his non-compete obligations – and (3) T&B's claim is barred by the doctrine of laches.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment may be granted if the materials submitted to the Court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).  Where the facts are not in dispute and the issues contested in a summary judgment motion are legal issues, the Court may decide the legal issues and rule accordingly on the summary judgment motion.  See Ingram v. County of Bucks, 144 F.3d 265, 267 (3d Cir. 1998) (when there is no genuine issue of material fact in dispute and the issue facing the court is a question of law, it can properly be resolved on summary judgment).  The existence of a "mere scintilla of evidence in support of [a] nonmovant's position will be insufficient" to withstand a summary judgment motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  In determining whether more than a scintilla is extant, a court must "not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder."  Boyle v. County of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998).

B.     **Duty to Disclose**

Under New Jersey law, "legal fraud is 'a material misrepresentation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment.'" Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 144-45 (3d Cir. 2001) (citing Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624 (1981)). Normally, New Jersey courts will not imply a duty to disclose where a claim for fraud is based on silence or concealment. Id. However, if the parties are in a fiduciary relationship, if the transaction itself is fiduciary in nature, or if one party "expressly reposes a trust and confidence in the other," a duty to disclose can arise. Berman v. Gurwicz, 189 N.J. Super. 89, 93-94 (Ch. Div. 1981); Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1185 (3d Cir. 1993).

The relationship between employer and employee creates a fiduciary relationship under New Jersey law. See Masse v. Board of Trustees, Public Emp. Retirement Sys., 87 N.J. 252, 257 (1981) (in which the New Jersey Supreme Court referenced the precept that "there is a fiduciary relationship between employer and employee."); Fields v. Thompson Printing Co., 363 F.3d 259, 270 (3d Cir. 2004) ("Every employee owes a duty of loyalty to their employer."); Lamorte Burns & Co. v. Walters, 167 N.J. 285, 302 (2001) ("An employee must not while employed act contrary to the employer's interests."). Thus, by virtue of Mr. Luzzi's employment with Elastimold, some duty of disclosure clearly existed.

C.     **Luzzi's Disclosure**

It is uncontested that Mr. Luzzi told T&B's manager, Mr. Borgrstrom, who executed the release, that he contemplated working for Richards Manufacturing and that Richards would not

3

hire him unless he was released from his one year non-compete agreement. Mr. Luzzi further testified that he told Borgstrom what he would be doing at Richards. Specifically, he stated in his deposition that he "told [Mr. Borgstrom] my plan, whether I worked for Cooper or for Richards, was to develop a line of I, Y, and H connectors and bring them in to Con Edison." (Luzzi Tr. 95:2-16, Cantine Dec. Ex. D.)

While Borgstrom did not categorically deny having such a conversation, a fair reading of his testimony indicates that it is sufficient to create a contested issue of material fact on this point. At his deposition, he stated:

> Q. Did Mr. Luzzi advise you that without a letter of this time [sic], he couldn't get employed by Richards?
> A. Yes.
> Q. Did he explain to you why that was the case?
> A. No.
> Q. Did you inquire as to why?
> A. We never really talked about it.
> Q. When he asked that he be released from his covenant not to compete, did you understand that he would be competing?
> A. It was never discussed that that's what he was going to do.
> Q. You knew at one point he was going to go to Cooper. Is that correct?
> A. That's correct.
> Q. Cooper competes with you all in certain products. Is that correct?
> A. Yes.
> Q. Medium voltage products?
> A. Yes.
> Q. Similar products to those that were under Mr. Luzzi's –
> A. Yes.
> Q. Department. Yes?
> A. Uh-huh.
> Q. Okay. And would it have mattered whether Mr. Luzzi made a request for Cooper or for Richards?
> A. Yes.
> Q. Why?
> A. Because we competed with Cooper at that time and we

4

|   |   |
|---|---|
| | didn't compete with Richards. |
| Q. | But you knew he was going to Richards? |
| A. | Yes. |
| Q. | And you're saying you would not have given him this letter for Cooper but you would have for Richards? |
| A. | Richards was not a competitor. |
| Q. | And is it your testimony that Mr. – first of all, isn't it true that at the time Richards was selling low voltage connectors? |
| A. | I would assume so, yeah, I guess. |
| Q. | And you don't sell low voltage connectors? |
| A. | No, not really at that time. |
| Q. | Do you sell them now? |
| A. | Nothing that as far as I know competes with Richards. |
| Q. | And is it your testimony that you had no conversations with Miss Hedges at this time about Mr. Luzzi? |
| A. | Certainly I had a conversation with Hedges about Glenn. |
| Q. | Is it your testimony you never had a conversation about Richards creating a competitive product or you don't remember whether you had a conversation at that time? |
| A. | As far as I recall, there was no conversation between Glenn and I that he was going to Richards to create a competitive product. |

(Borgstrom Tr. 146:15-139:6.) In short, for purposes of a summary judgment motion, Mr. Borgstrom's testimony that "[a]s far as I recall, there was no conversation between Glenn and I that he was going to Richards to create a competitive product" is sufficient to create a factual issue on this point.

Mr. Luzzi also asserts that he gave the same basic information to Kay Hedges, T&B's Human Resource Director. During his deposition, Mr. Luzzi stated he "spoke to Kay Hedges, who was a director of human resources, and told her [he] was going to be, that [he] was looking for another job and that [he] would like the have worked for Richards Manufacturing, but [he] could not because of that agreement." (Luzzi Tr. 89:10-15, Cantine Dec. Ex. D.) Mr. Philbrick, T&B's counsel, then asked:

> Q. Did you tell her what it is that you will be expected to do at Richards?
> A. Yes.

(Luzzi Tr. 90:6-8, Cantine Dec. Ex. D.) Hedges does not deny that such a conversation took place. Instead, she testified in her deposition that she could not recall whether Luzzi told her about his intentions. (Hedges Tr. 37:12-20, Cantine Dec. Ex. F.) Thus, as regards the conversation with Ms. Hedges, Mr. Luzzi's testimony remains uncontroverted.

If the above were all that existed in the record concerning the situation, this Court would be somewhat hesitant to grant summary judgment. The record contains one more item, however – the release itself. It was drafted by Mr. Borgstrom and it reads as follows:

> Dear Mr. Luzzi:
>
> Thomas & Betts-Elastimold recently learned that you are seeking employment elsewhere. In order to allow you to gain employment commensurate with your engineering background in the utility products industry, Thomas & Betts hereby releases you from any previous employment restrictions which you have signed.
>
> Notwithstanding the above, it is understood that you are not permitted to share or release information proprietary to Thomas & Betts–Elastimold.

(Cantine Dec., Ex. E.)

The fact that Mr. Luzzi requested a written release from his non-competition agreement in order to work for another company "in the utility products industry" is more than sufficient to bar T&B's claim for fraudulent concealment. As Mr. Luzzi's opposition brief pithily observes:

> Defendant's opposition never answers the one obvious question. Borgstrom, the author of the release, is the General Manager of Defendant's entire New Jersey operation, and is an intelligent, seasoned executive of Defendant. When Luzzi requested a written release from his non-compete agreement, what did Borgstrom

> think he intended to do? Flip hamburgers? Why else would Luzzi request a written release if he did not intent to compete? Borgstrom's convenient memory lapse to the side, the only reasonable conclusion is that Borgstrom knew (or should have known) that Luzzi intended to compete with Defendant.

(Reply at 1.)

Thus, while there may be a factual issue as to whether or not T&B was specifically advised that Mr. Luzzi intended to work on specific products which competed with those of his former employer, there is no doubt that T&B was notified that he intended to work for a company that would only hire him if he was free to compete with T&B. This is highlighted by the fact that the document, while releasing him from his non-compete agreement, did not release him from his obligation to refrain from using proprietary information obtained during his employment. T&B's awareness is further demonstrated by the fact that, although they learned in September of 1999 that Mr. Luzzi was developing a competing line of disconnectable connectors (September 22, 1999 Memorandum, attached to the Cantine Dec. as Ex. H), they waited over two years before trying to enforce a one-year non-compete agreement.

In short, the uncontroverted evidence in this case demonstrates that T&B was aware that Mr. Luzzi would be working for a competitor when the release was signed and, therefore, cannot sustain a viable claim that the release was procured by fraud.

**IV.     CONCLUSION**

      For the foregoing reasons, summary judgment will be granted in favor of defendant Glenn Luzzi on plaintiff's fraud claim.


Date:  April 3, 2006

                                                   s/ Stanley R. Chesler
                                                   United States District Judge