UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS & BETTS CORP., | : Civil Action No.: 01-4677 (SRC) |
| Plaintiff, | : |
| v. | : OPINION and ORDER |
| | : ON INFORMAL MOTION |
| RICHARDS MANUFACTURING COMPANY, et. al., | : |
| Defendants. | : |

I.     INTRODUCTION

This matter comes before the Court on the informal motion of Plaintiff Thomas & Betts Corporation (hereinafter "T&B") to bar Defendants', Richards Manufacturing Company and Glenn Luzzi (hereinafter "Richards"), use of certain documents at trial. For the reasons set forth below the motion is GRANTED in part and DENIED in part.

II.     PROCEDURAL BACKGROUND

In late 2005, T&B sought to preclude Richards from proffering certain evidence at trial which T&B alleges was not produced in discovery. On November 17, 2005 this Court denied T&B's motion and ordered that T&B "provide [Richards] a comprehensive list of evidence it alleges it has not been provided regarding the independent manufacturing process of 600 Amp connectors that [T&B] allege they have developed." [Docket Entry #195]. On December 2, 2005, T&B electronically filed two evidence lists (hereinafter "Evidence List") [Docket Entry #198-2]. The first list outlined information consistent with the specific instructions of this Court's November 17, 2005 Order. The second list outlined evidence which T&B alleges "Richards apparently intends to rely upon at trial for issues other than its alleged 'independent

manufacturing process of 600 Amp connectors,' " and should be precluded because it was not provided to T&B during discovery. (Evidence List at 1-2).[1]  The Court established a briefing schedule, with Richards' response to the Evidence List due on January 31, 2006 (hereinafter "Richards Brief") and T&B's reply and renewed formal motion due by February 22, 2006 (hereinafter "T&B Reply Brief").

III.    FACTUAL BACKGROUND

The allegations in this case are well known to the parties and will not be repeated here at length.  T&B's Trade Secrets and items of Confidential Information have been a moving target since the inception of this case.  (See Richards Brief at 4).  During discovery Richards propounded Interrogatories to T&B asking for a description of each Trade Secret and item of Confidential Information that had allegedly been misappropriated by Richards. (Id.).  With the filing of T&B's Amended Answer in December 2001,[2] T&B identified four specific trade secrets.  T&B's initial responses to Richards' interrogatories identified the same four trade secrets, but not a single item of confidential information.  (Id.)  After a January 11, 2003 site inspection of Richards' facility, T&B provided Richards with an approximately 600 page supplemental document production. (Id. at 5).  Upon receipt of the documents, Richards

---

[1]  The second submission was beyond the scope of this Court's Order.  Despite T&B's unilateral expansion, this opinion will address all items which T&B seeks to be excluded.

[2]  This matter was originally filed by Richards. On October 31, 2005, T&B's motion to realign the parties was granted, and T&B was to be referred to as Plaintiff and Richards were to be referred to as Defendants.[Docket Entry # 193].

-2-

requested that the Court Order T&B to identify any additional misappropriated trade secrets or other items of confidential information related to the supplemental document production. (Id.) The Court ordered T&B to supplement its response to Interrogatory Number 10 to identify any additional allegations. (Id.) T&B served its first supplemental interrogatory responses in March 2003, identifying six additional alleged trade secrets. (Id.) After various schedule changes, fact discovery was closed on June 20, 2003 and expert reports were to be exchanged by August 8, 2003.

  Two months after the close of fact discovery, seven months after conducting their site inspection, and four months after first identifying the four trade secrets, T&B served the report of its expert Walworth "that identified for the **first time**[,] 39 items of confidential information that T&B claimed was misappropriated by Richards." (Id. at 6) (emphasis added)  On September 12, 2003 the parties attended an in-person discovery conference to address what discovery was needed related to the 39 new items of confidential information. At this conference, T&B indicated that they intended to raise additional items of confidential information that were misappropriated. The Court ordered T&B to identify all items it claimed are confidential and proprietary no later than September 22, 2003. [Docket Entry # 55]. On September 22, 2003, T&B supplemented its response to Interrogatory Number 10, listing 92 items of confidential information that it alleged were misappropriated by Richards. (Richards Brief at 7). Contrary to the Court's clear instructions, T&B marked its list of 92 items as non-exhaustive. (Id.) Eventually in November 2003, after numerous conferences with this Court, T&B was barred from raising any additional items of misappropriated confidential information

other than the 92 it had most recently alleged (hereinafter "92 items"). Fact discovery was reopened for the sole purpose of identifying and finalizing what T&B alleged were its misappropriated trade secrets and 92 items of confidential information. (Id. at 7-8). However, it was eventually discovered that the additional six trade secret claims and 92 items were identified by T&B's expert Walworth. (Id. at 8). Richards finally learned the specifics of T&B's allegations regarding the 92 items when they deposed Mr. Walworth in November 2004. (Id.) During December 2004, the parties were working on a joint proposed Final Pretrial Order which was forwarded to the Court on January 4, 2005. (Id. at 8-9) The Final Pretrial Order was filed by this Court on April 4, 2005 [Docket Entry # 65]. By the time the Court approved the Final Pretrial Order "**nearly** every one of [the] Exhibits had been physically inspected by [T&B]." (Richards Brief at 9).

      T&B then moved to preclude Richards from proffering evidence at trial that was not tendered during discovery. (T&B Reply Brief at 3).

IV.    DISCUSSION

      Under Rule 26 of the Federal Rules of Civil Procedure, a party is required to supplement their discovery production only if "the additional or corrective information **has not** otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(2) (emphasis added). Under Rule 37, a court may impose sanctions, including exclusion of the evidence, if a party "without substantial justification fails . . . to amend a prior response to

-4-

discovery as required by Rule 26(e)(2) . . . unless [the] failure is harmless." Fed. R. Civ. P. 37(c)(1).

The Third Circuit Court of Appeals has held that "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-905 (3d Cir. 1977) (quoting Dudley v. South Jersey Metal, Inc., 555 F.2d 96, 99 (3d Cir. 1977)); See also In Re TMI Litig., 193 F.3d 613, 721-22 (3d Cir. 1999).  In determining whether to exclude evidence based on a failure to comply with discovery obligations, the court must consider: "(1) the prejudice or surprise to a party against whom the evidence is offered; (2) ability of the injured party to cure the prejudice; (3) likelihood of disruption of trial; (4) bad faith or willfulness involved in not complying with the disclosure rules," In Re Mercedes-Benz Anti-Trust Litigation, 225 F.R.D. 498, 506 (D.N.J. 2005), and "(5) importance of the evidence to the proffering party." Astrazeneca A.B. v. Mutual Pharmaceutical Co., Inc., 278 F.Supp. 2d 491, 504 (E.D. Pa. 2003) (citing Meyers, 559 F.2d at 904); See also Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997).

T&B requests that the exhibits listed in its Evidence Lists be precluded from trial based upon Fed. R. Civ. P. 37(c)(1) because of Richards' failure to **timely** supplement its discovery responses.  T&B Reply Brief at 8 (emphasis added).  T&B cannot however reasonably claim prejudice as the Court in January 2005 gave them the opportunity to take any additional discovery they deemed necessary.  Moreover a showing of willful disregard or bad faith on the part of Richards is lacking.  None of the items sought to be excluded could have been identified

until Richards was granted discovery in late 2004 based upon T&B's untimely disclosure of the 92 items after the close of discovery. The evidence sought to be precluded is also critical to Richards claim of an independent manufacturing process for 600 Amp connectors, and therefore T&B's application for the preclusion of certain evidence related to the independent manufacturing process for 600 Amp connectors is denied.

    a.  Prejudice to T&B and their ability to cure

Similar to In re Mercedes Benz Anti-Trust Litig., any prejudice that might have occurred in this matter was cured when the Court allowed T&B to conduct any additional discovery they needed in January 2005. In determining the issue of prejudice or surprise the court "should not speculate on how [the surprised party] would have used the additional information disclosed," rather prejudice exists when the surprised party would have conducted discovery differently. In re Mercedes-Benz Anti-Trust Litig., 225 F.R.D. at 506. However, the Court has also concluded that the prejudice could be cured by additional depositions or supplemental briefing. Id. at 505-508. The circumstances surrounding the instant case do not begin to approach a prejudice against T&B requiring the "extreme" sanction of preclusion. In fact, T&B's repeated delays and refusals to submit a conclusive list clearly identifying the 6 additional trade secrets and 92 items of confidential information that were misappropriated, is the sole cause of Richards' delay in identifying and producing relevant exhibits. Moreover, the Court afforded opportunity to take any additional discovery stunted any prejudice that T&B may have experienced due to T&B's late identification of the 92 items and Richards subsequent identification of relevant exhibits.

### b.  Likelihood of Disruption of Trial

As for whether Richards' delayed production is likely to disrupt the trial, this factor is irrelevant here given the stage of the litigation.  Id. at 507.

### c.  Bad faith or willful disregard

The Court must also look at whether there was bad faith, "willful deception or 'flagrant disregard' of a court order" by Richards.  Meyers, 559 F.2d at 905.  After carefully reviewing the timeline of disclosures, document production and depositions, the Court has not found any "willful deception" or "flagrant disregard" by Richards.  T&B continually asserts that Richards "waited until the Final Pretrial Conference to produce witness and the testimonial evidence sought to be used at trial."  T&B Reply Brief at 13.  Prior to the site inspection on January 11, 2003 none of the items that are the subject of T&B's Motion had been identified by T&B as trade secrets or confidential information. In fact, T&B fails to address that it was not until November 2004 at Walworth's deposition that the 92 items of confidential information were clearly identified.  This was merely two months prior to the parties' submission of the proposed Final Pretrial Order.  It is clear that Richards' identification of the relevant exhibits in December 2004, less than one month after Walworth's deposition and identification of the 92 items, was reasonable.  Richards did not act in bad faith or with willful disregarded this Court's instructions, and therefore the Court concludes that Richards did not willfully withhold evidence.

### d.  Importance of the Evidence to Richards

The last factor the Third Circuit has directed district courts to consider is the importance of the disputed evidence to the proffering party's case. In re Mercedes-Benz Anti-Trust Litig., 225 F.R.D. 498, 507; See also Konstantopoulos v. Westvaco Corp., 112 F.3d 710. There can be no dispute that "[t]he evidence is relevant to Richards' defenses, and Richards' entire case would be prejudiced by their exclusion." Richards Brief at 4.

e.  Weighing the Factors

After carefully examining the arguments of the parties and the unique procedural timeline in this matter, the Court concludes that Richards' delay in producing the documents in question was caused by T&B's failure to identify its 6 additional trade secrets and 92 items of confidential information in a timely manner. The Court finds that T&B was not significantly prejudiced or unfairly surprised by Richards' delay, and that T&B had ample opportunity to cure any prejudice. Moreover, the Court finds that Richards' delay was not in bad faith or with willful disregard to the Court's directives, rather the delay was a product of T&B's failure to clearly and conclusively identify their claims. Finally, it is undisputed that the subject exhibits are crucial to Richards' defenses and their exclusion would be highly prejudicial. Therefore, any delays by Richards in producing documents was harmless or could have been easily cured and does not warrant the severe sanction of exclusion.

V.   CONCLUSION

Consistent with the Opinion of this Court, it is,

ORDERED that T&B's request to bar Richards from relying on documents which T&B had produced during discovery is DENIED; and it is further

ORDERED that T&B's request to bar Richards' use of documents which had been produced but not identified as those upon which it would rely since their relevance was not known until submission of the Final Pretrial Order is DENIED; and it is further

ORDERED that T&B's request to bar Richards' use of documents if specifics were not known (e.g. attachments to expert reports that Richards had produced but were not specifically recognized) is DENIED; and it is further

ORDERED that T&B's request to preclude Richards' reliance on third party submissions is GRANTED, provided that the relevance of said submissions was known to Richards prior to the submission of the Final Pretrial Order.

  s/ Tonianne J. Bongiovanni
TONIANNE J. BONGIOVANNI
United States Magistrate Judge

Dated: May 15, 2006