**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CHAMBERS OF
MICHAEL A. SHIPP
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST. ROOM 2042
NEWARK, NJ 07102
973-645-3827

Not for Publication

**LETTER OPINION & ORDER**

June 10, 2010

**VIA CM/ECF**
All Counsel of Record

**Re: Thomas & Betts v. Richards Manufacturing Co., et al.**
**Civil Action No. 01-4677 (SRC)(MAS)**

Dear Counsel:

This matter comes before the Court by way of Plaintiff Thomas & Betts's ("Plaintiff" or "T&B") motion to compel the production of updated financial information, sales of additional products manufactured using misappropriated information and sales made to additional customers. (Doc. No. 394.) Richards Manufacturing Company ("Richards") and Glenn Luzzi ("Luzzi"), a former T&B employee (collectively "Defendants"), oppose Plaintiff's motion. (Doc. No. 395.) For the reasons expressed below, Plaintiff's motion is granted in part and denied in part.

## I. Statement of Facts

Plaintiff alleges that Luzzi, after leaving Plaintiff's employ to work for competitor Richards, misappropriated information about Plaintiff's underground electrical connector products which Richards used to gain a competitive advantage. *Thomas & Betts Corp. v. Richards Mfg. Co.*, 342 Fed. Appx. 754, 756 (3d Cir. 2009). Additionally, Plaintiff alleged breach of contract, breach of duty of loyalty and fraud claims against Luzzi, as well as tortious interference and unjust

enrichment claims against Richards. *Id.* The District Court granted summary judgment in favor of the Defendants for the misappropriation claim and dismissed all other claims. *Id.* The parties appealed and this matter is now before the Court on remand from the Third Circuit.

In remanding, the Third Circuit concluded the District Court (i) applied the wrong New Jersey law when granting summary judgment for the misappropriation claim; and (ii) applied an overly restrictive standard to the admissibility of T&B's expert. *Id.* The Third Circuit stated that on remand, the District Court should consider whether the allegedly misappropriated information was provided to Luzzi by T&B in the course of his employment for the sole purpose of furthering T&B's business interests. *Id.* at 759. The Third Circuit denoted four factors that should be taken into consideration in deciding that question: (1) whether the information was generally available to the public; (2) whether Luzzi would have been aware of the information if not for his employment with T&B; (3) whether the information gave Luzzi and, by extension, Richards, a competitive advantage over T&B; and (4) whether Luzzi knew that T&B had an interest in protecting the information to preserve its own competitive advantage. *Id.* at 759-60. These factors are not essential elements of a claim, but rather focus the inquiry on the relationship between the employer and employee, the expectations of the parties and the intended use of the parties. *Id.* at 760.

Accordingly, this Court must now assess whether Plaintiff's request for an order compelling the production of updated financial information and expansion of discovery to include sales to customers other than Con Edison and sale of products other than the underground electrical connector product suite, as relevant to the issues remanded by the Third Circuit. Since the parties are well-versed with the underlying facts of this case, the Court will address only those facts relevant to the motion below.

## II. Legal Standard and Analysis

Under Federal Rule of Civil Procedure 26(b), a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action, provided that the court finds good cause. This Court applies a liberal standard, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Wiggins v. Clementon Police Dep't*, 2009 U.S. Dist. LEXIS 66955, at *5 (D.N.J. July 30, 2009) (citing *Pacitti v. Macy's,* 193 F.3d 766, 777 (3d Cir. 1999)). The party seeking discovery bears the burden to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 1990); *see also Nestle Food Corp. v. Aetna Cas. & Surety Co.*, 135 F.R.D. 101, 103 (D.N.J. 1990). Stated differently, Federal Rule of Civil Procedure 26 has been interpreted to mean that discovery encompasses "any matter that bears on or reasonably could lead to other matters that could bear on any issue that is or may be in the case." *Kopacz v. Del. River & Bay Auth.,* 225 F.R.D. 494, 496 (D.N.J. 2004). Importantly, a party must correct or supplement its prior disclosure or response "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1)(A).

Although the Federal Rules of Civil Procedure allow for broad and liberal discovery, the Third Circuit has stated that the "right is not unlimited and may be circumscribed." *Bayer AG v. Betachem*, Inc., 173 F.3d 188, 191 (3d Cir. 1999). Specifically, when the burden of a discovery request is likely to outweigh the benefits, Federal Rule of Civil Procedure 26(b)(2)(c) vests the

District Court with the authority to limit a party's pursuit of otherwise discoverable information. *See id.* When assessing whether the burden to produce outweighs the benefits, the following factors may be considered: (i) the unreasonably cumulative or duplicative effect of the discovery; (ii) whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery;" and (iii) "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(c). The purpose of this rule of proportionality is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Bowers v. Nat'l Collegiate Athletic Assoc.*, No. 97-2600, 2008 LEXIS 14944, at *14 (D.N.J. Feb. 27, 2008) (quoting *Leksi, Inc. v. Fed. Ins. Co.,* 129 F.R.D. 99, 105 (D.N.J. 1989)).

**A. Production of Updated Financial Information**

Plaintiff asserts Defendants must supplement their disclosures with updated financial information. Plaintiff seeks the updated information in order to measure compensatory damages by assessing Richards' net profits from the time Richards employed Luzzi. (Pl.'s Moving Br. 3). Plaintiff argues that Richards is required to supplement previous disclosures under the Federal Rules of Civil Procedure because, once the discoverability of information is established, Plaintiff is entitled to that information without Defendants' discretion and with no further showing of good cause. (Pl.'s Reply Br. 2.) Moreover, Plaintiff asserts it requested Richards' updated financial information relying on a prior right to discovery, not a waived discovery right or as a request to reopen discovery. (*Id.*) Finally, Plaintiff cited *Cacique, Inc. v. Tropical Cheese Industries, Inc.*, No. 03-2081, 2006 U.S. Dist. LEXIS 44280 (D.N.J. June 22, 2006), in which this Court held: (i) a

plaintiff was entitled to net profits derived from the use of misappropriated confidential information; and (ii) damages may be measured by the defendant's net profits from the conclusion of a former employee's employment by the plaintiff. (*Id.* at 4.) Plaintiff argues that although the *Cacique, Inc.* matter involved an alleged misappropriation of trade secrets, the damages theories in *Cacique, Inc.* are nonetheless similar to this matter because *Cacique, Inc.* also involved alleged theft of confidential and proprietary information. (*Id.*)

Defendants, on the other hand, contend Plaintiff's motion should be denied. First, Defendants assert three procedural justifications: (i) Plaintiff did not inform Defendants of an intent to file this motion prior to filing it, despite Local Civil Rule 37.1(a), which requires parties meet and confer in an effort to resolve any discovery disputes without court intervention; (ii) Plaintiff failed, under Local Civil Rule 37.1(a)(1), to request the required permission of the Court to submit the motion, either in writing or during a status conference, before filing the motion; and (iii) Plaintiff failed to attach the required affidavit identifying the specific efforts taken by a moving party to resolve the issue without intervention as required under Local Civil Rule 37.1(b)(1). (Defs.' Opp'n Br. 2-3.)

Next, Defendants assert that the financial information disclosures provided to date are sufficient because (i) net profits are irrelevant for damages for misappropriation of confidential information; (ii) damages are limited to the advantage Richards received by way of obtaining and using the confidential information; and (iii) the time period for damages is limited. (*Id.* at 4-11.) Defendants argue that case law does not support the use of net profits for damages for misappropriation of confidential information. (*Id.* at 4-5.) Defendants distinguish *Cacique, Inc.* because, unlike this case, the Court awarded damages for misappropriation of trade secrets in

addition to misappropriation of confidential materials and points to the more limited 2-year damages period sought. (*Id.* at 5.) Defendants also distinguish the cited case law in *Cacique, Inc.*, showing the damages periods in these cited cases were limited or unaddressed. (*Id.* at 5-6.)

As stated above, Defendants assert that damages for misappropriation of confidential information, if proven, are limited to the advantage Defendants received by way of obtaining and using the improperly retained confidential information. (Defs.' Opp'n Br. 6-7 (citing *Midland-Ross Corp. v. Yokana*, 293 F.2d 411 (3d Cir. 1961)).) As such, Defendants seek to limit further disclosure because Plaintiff has not proffered any evidence concerning advantages provided by the confidential information at issue, failing to (i) present evidence with respect to how the confidential information enabled Richards to effectively or efficiently manufacture the products; and (ii) offer any evidence of the time or money Richards was able to save and gain an advantage. (*Id.* at 6-7.)

Here, this Court finds good cause to grant Plaintiff's motion to compel the production of updated financial information. First, while this Court does not condone Plaintiff's failure to abide by this Court's procedural requirements for discovery disputes and motions, this Court will not deny the motion on purely procedural grounds. After reviewing the relevant papers and record before this Court, the undersigned finds: (i) the information Plaintiff seeks is clearly relevant to its damages claims; (ii) the information may lead to admissible evidence as the updated financial information has a direct bearing on available damages should the Court determine that use of net profits is the applicable standard; and (iii) the information may be admissible if Plaintiff can demonstrate that Defendants acquired a perpetual advantage and that Defendants are still profiting from the misappropriation. Defendants propose a myriad of limitations on the relevance of updating its financial information, continually reminding the Court of its previous disclosure of

seven-years of financial information with multiple citations to non-binding authority, and argue against damages in perpetuity. However, Plaintiff claims only that Defendants must update disclosures pursuant to Rule 26(e)(1), not a right to damages in perpetuity. Further, Plaintiff correctly asserts that no showing of cause is necessary to compel a party to update information already deemed discoverable. Thus, this Court finds that an order compelling the production of supplemented financial information is appropriate, as requiring same is not unduly burdensome or prejudicial and the information is clearly relevant and may lead to admissible evidence.

**B. Production of Documents Related to Additional Customers**

In its moving brief, Plaintiff argues this Court should expand the scope of financial information discovery to include customers other than Con Edison. (Pl.'s Moving Br. 4.) Plaintiff claims Richards is obligated to update its financial information to include sales to customers other than Con Edison because these sales have direct impact on Plaintiff's available damages. (*Id.*) Also, Plaintiff argues the procedural history of this case cannot support Defendants' claim that Plaintiff effectively waived its right to discovery in these areas. (Pl.'s Reply Br. 2.)

Defendants disagree, arguing that Plaintiff may not request information about additional customers because the time to claim deficiency of Defendants' discovery and disclosures has long since past. (Def's Opp'n Br. 11-12.) Discovery ended in 2003, Richards updated its financial disclosures in 2004 and 2006 and Defendants stress that Plaintiff made no claims of this information's deficiency until now. (*Id.* at 11.) Further, Defendants assert that Plaintiff has not even offered any evidentiary support for its assertion of insufficiency. (*Id.*) Accordingly, Defendants claim Plaintiff waived any right to discovery beyond sales to Con Edison and

Defendants should not be forced to incur the substantial cost of producing the documents and updating expert reports. (*Id.* at 11-12.)

This Court finds good cause to deny Plaintiff's motion with regard to the production of financial information for customers other than Con Edison. Throughout these proceedings, the scope of inquiry has been limited to sales to Con Edison. According to Plaintiff's complaint, Con Edison is a unique consumer in the underground electrical connector market. Indeed, much of this litigation focuses on whether Richards, who previously developed and successfully tested a 600-Ampere electrical connector, used Plaintiff's proprietary information to construct a 600-Ampere electrical connector compatible with Plaintiff's product line and, therefore, marketable to Con Edison. Nowhere does Plaintiff claim Richards, through misappropriation, gained a competitive advantage throughout the marketplace or in relation to specific consumers other than Con Edison. While Plaintiff packages the request as an "update" to discovery, Plaintiff essentially requests the Court reopen discovery when Plaintiff had ample opportunity to obtain the information in question, which this Court is not prepared to permit. Therefore, the request for information relating to additional customers is denied.

### C. <u>Production of Documents Related to Additional Products</u>

Plaintiff claims Richards expanded its catalog of products to include new products developed and manufactured through the use of the misappropriated confidential information and that such development and manufacturing would constitute an additional component of Plaintiff's damages. (Pl.'s Moving Br. 4.) Plaintiff states that in 2002, Richards confirmed it was not developing or manufacturing any products manufactured by Plaintiff's subdivision, Elastimold, beyond those at issue in the case and that Richards certified that it was under an obligation to

supplement this admission should it be necessary. (*Id.* at 4-5.) Plaintiff now contends that in April 2008, Richards admitted it was "developing or manufacturing" products "also manufactured by Elastimold." Accordingly, Plaintiff takes the position that it is entitled to information relating to those products to calculate compensatory and punitive damages. (*Id.* at 5.) Specifically, Plaintiff requests: (1) technical information so Plaintiff can ascertain the scope of the use of Plaintiff's proprietary information; (2) manufacturing information so that Plaintiff can ascertain Defendants efforts to amass additional products; and (3) financial and sales information. (*Id.*) Plaintiff posits all these claims on the belief that Defendants relied on Plaintiff's proprietary knowledge and techniques to develop and manufacture these new products, the profits from which should be factored into Plaintiff's damages. (*Id.*)

Defendants contest Plaintiff's reading of these Admissions. First, Defendants contend that the 2002 Admission states Richards was not "developing or manufacturing any products manufactured by Elastimold," not that no products manufactured by Defendants were developed through use of Plaintiff's confidential information. (Defs.' Opp'n Br. 13.) Defendants argue the denial was an expression of Defendants' right to develop and manufacture additional new products outside the Elastimold catalogue and to be free from any further discovery. (*Id.*) Further, Defendants assert that, after the close of discovery, Plaintiff received all relevant updates when Richards developed and manufactured or intended to develop and manufacture a product also developed and manufactured by Elastimold. (*Id.* at 14.) Finally, Defendants argue that Plaintiff failed to identify any previous discovery request that Defendants could update to provide financial, technical and manufacturing information for these new products, even though these products were identified during the discovery period, in advance of having to draft the proposed joint final pretrial

order. (*Id.*) As such, Defendants assert that they is under no obligation to supplement its discovery responses and that Plaintiff's request to re-open discovery with respect to these new products should be denied. (*Id.*)

This Court finds good cause to deny Plaintiff's motion to compel with respect to the additional products manufactured by Defendants. As noted above, discovery in this matter closed in 2003. Plaintiff's request for technical and manufacturing information is not a request for Defendants to "update" previous disclosures, but in fact, it is a request to re-open discovery altogether. The focus of this claim has always been on the sale of the product to Con Edison and the alleged competitive advantage gained by Defendants from using Plaintiff's proprietary information to develop and manufacture underground electric connectors and associated products. Indeed, Plaintiff's complaint only identifies information related to underground electrical connectors and, according to Defendants and undisputed by Plaintiffs, Richards periodically updated disclosures as it developed related products in the electrical connector product suit. If Plaintiff believed Richards used proprietary information in developing products similarly manufactured by Elastimold, Plaintiff had ample opportunity to discover technical, manufacturing and financial information about these products during the discovery period. Further, had Plaintiff endeavored to obtain this information, Defendants would be bound to update any disclosures made relating to any products potentially developed using Plaintiff's confidential information. Here, Plaintiff's failure to request this information during the discovery period is untimely and would be prejudicial, as it would expand the scope of discovery, delay the proceedings and require Defendants to unfairly expend resources to respond. Thus, the request for technical, manufacturing and financial information relating to additional products is denied.

## III. Conclusion

Based on the foregoing and for good cause shown, it is **ORDERED** that:

1. Plaintiff's motion to compel is granted in part and denied in part.
2. Defendants shall produce updated financial information related to sales made to Con Edison by **June 17, 2010.**
3. Plaintiff's motion to compel: (i) the production of financial information related to additional customers other than Con Edison; and (ii) the production of financial information related to additional products manufactured by Defendants, is denied.

**HONORABLE MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**