# MANDELBAUM SALSBURG

**MANDELBAUM, SALSBURG, LAZRIS & DISCENZA, P.C.**

*Member of International Society of Primerus Law Firms*

ATTORNEYS AT LAW
FOUNDED IN 1930

**155 PROSPECT AVENUE**
**WEST ORANGE, NJ 07052-4204**
**TEL. (973) 736-4600  -  FAX (973) 325-7467**

UNION COUNTY OFFICE
75 ELIZABETH AVENUE
ELIZABETH, NJ 07206
TEL. (908) 353-6764   -   FAX (908) 353-6780

MIDDLESEX COUNTY OFFICE
317 GEORGE STREET, SUITE 440
NEW BRUNSWICK, NJ 08901
TEL. (732) 628-0900   -   FAX (732) 628-0920

MONMOUTH COUNTY OFFICE
119 MAPLE AVENUE
RED BANK, NJ 07701
TEL. (732) 933-1515   -   FAX (732) 933-5551

FLORIDA OFFICE
10304 CROSBY PLACE
PORT ST. LUCIE, FL. 34986
TEL. (772) 460-6356   -   FAX (772) 460-6357
E-Mail: rsteinberg_esq@yahoo.com

NEW YORK CITY OFFICE
90 JOHN STREET, SUITE 309
NEW YORK, NY 10038
TEL. (212) 791-7200   -   FAX (212) 791-7276

Website:  www.msqld.com
E-Mail  dward@msqld.com
ALL REPLIES TO:  **WEST ORANGE**
REFERENCE FILE #

IRVING MANDELBAUM (1906-1993)
BARRY R. MANDELBAUM
RICHARD M. SALSBURG†►
YALE I. LAZRIS
JOSEPH J. DISCENZA+
JOSEPH A. VENA
LYNNE STROBER♦
OWEN T. HUGHES²
RICHARD L. SLAVITT⁵►
CHARLES S. LORBER
ARTHUR D. GROSSMAN
DEBORAH L. GREENE
ROBERT W. GLUCK
MICHA EL A. SAFFER³
STEVEN A. HOLT¹
DENNIS J. ALESSI⁶
MARK F. KLUGER
WILLIAM H. HEALEY⁵♦
JOSEPH J. PETERS
CRAIG W. ALEXANDER³
WILLIAM S. BARRETT¹⁵
STUART GOLD⁷►
CHERYL H. BURSTEIN⁴
ROBIN F. LEWIS³
THOMAS W. ACKERMANN³
SHARON T. JACOBSON
DAVID S. CARTON■
ARLA D. CAHILL⁵
DAVID A. WARD⁵
LANCE N. OLITT³

ALAN L. SUSSMAN³
LISA FACTOR FOX³
MARC J. COMER⁵
ROSEMARIE DaSILVA⁵

RICHARD I. SIMON
JAMES T. ELLIOTT²
RICHARD I. MILLER, LLC³
DEAN T. BENNETT²

– COUNSEL –

– OF COUNSEL –

RICHARD H. STEINBERG²
MARK BAUMGARTEN
MICHAEL SCHLESINGER
CHARLES E. BAXLEY▼
JOHN P. MALDJIAN

HON. ROBERT A. LONGHI (RET.)
JOHN P. LITTLE
GARY C. ANGIULI
JON FALLON
SHAY S. DESHPANDE

– ASSOCIATES –

MANUEL R. GROVA, JR.
DEBORAH A. CONCEPCION
GARY S. POPLASKI⁵
PETER H. TANELLA
MARTIN M. BARRY¹
MARA P. CODEY³

ALONA MAGIDOVA³
ANDREA L. ALEXANDER⁴
OWEN J. LIPNICK³
PHILLIP G. RAY
CASEY L. CARHART⁵

♦ FELLOW OF THE AMERICAN ACADEMY OF MATRIMONIAL LAWYERS
+ DESIGNATED BY THE SUPREME COURT OF NEW JERSEY AS A CERTIFIED CIVIL TRIAL ATTORNEY
■ CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CERTIFIED MATRIMONIAL LAW ATTORNEY
► COURT APPOINTED MEDIATOR          ▼ REGISTERED U.S. PATENT ATTORNEY
1 MEMBER OF NJ & PA BAR              4 MEMBER OF NJ, NY & CA BAR
2 MEMBER OF NJ & FL BAR             5 MEMBER OF NJ, NY & PA BAR
3 MEMBER OF NJ & NY BAR             6 MEMBER OF NJ, NY & D.C. BAR

December 14, 2010

**By ECF**

Honorable Stanley R. Chesler, U.S.D.J.
United States District Court
District of New Jersey
U.S.P.O & Courthouse Bldg.
Newark, NJ 07101

> Re:   Thomas & Betts Corporation v.
>        Richards Manufacturing Company, *et al.*
>        Case No.  01-4677 (SRC)(MAS)

Your Honor:

Defendants respectfully submit the annexed letter outlining their objections to the Jury Instructions as well as the annexed proposed instructions that defendants submitted for the Court's consideration during the charging conference.  Defendants of course supplement these objections with the objections asserted on the record during the charge conferences and during trial, which we again summarized this afternoon after the Court read the instructions to the jury.

> Respectfully,
>
> */s/ David A. Ward*
> David A. Ward

cc:  All counsel (By ECF)

# STROOCK

By Email

December 11, 2010

Steven B. Pokotilow
212-806-6663
SPokotilow@stroock.com

Honorable Stanley R. Chesler,
United States District Judge
District of New Jersey
U.S. Post Office & Courthouse Bldg.
50 Walnut Street, P.O. Box 999
Newark, NJ 07101

Re:   Thomas & Betts Corp. v. Richards Mfg. Co., et al. Civil Action No. 01-4677 (SRC)

Your Honor:

With a view towards streamlining the charging conference, Defendants set forth their position on why the jury should be charged on a reasonably royalty theory with respect to damages.   The cited authority is attached for the Court's consideration.

To summarize, as T&B itself acknowledges in its proposed instruction, the jury may find that T&B's lost profits are speculative, in which case the jury may revert to a disgorgement theory. (see T&B Request No. 5).   Under a disgorgement theory, however, the jury must apportion the amount of Defendants' profits attributable to the misappropriated information versus the amount of the profits attributable to other factors, such as independent development, reputation, service, etc.  In light of the evidence presented at trial, and in particular the extensive comingling of the Defendants' independent development efforts together with the alleged misappropriation, the jury may find it too difficult to make such an apportionment.  If so, a reasonable royalty theory may be the only non-speculative measure of damages.  Accordingly, Defendants maintain that the jury should be so charged in order to provide the jury with the necessary tools to determine damages in light of the evidence presented.

T&B asserts that absent misappropriation, Defendants would have been barred from entry in the market for a certain period of time, entitling T&B to its lost profits for that head-start period (i.e. the period of time Defendants got to market sooner than they could have by independent development and/or reverse engineering).   Defendants, however, presented evidence by which the jury could find that T&B failed to establish the necessary "but-for" relationship and also presented evidence by which the jury could find that T&B's lost profits are speculative.

Honorable Stanley R. Chesler
December 11, 2010
Page 2

Specifically, T&B's lost profits theory does not account for a finding that Defendants independently developed and/or reverse engineered certain of the products at issue. See, e.g., O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 399 F. Supp. 2d 1064, 1077-78 (N.D. Cal. 2005) (reducing damages to a paid up reasonable royalty based on the head start period after jury concluded that defendant did not misappropriate all of plaintiff's trade secrets and plaintiff's expert damages testimony provided the jury with no basis to apportion damages). T&B's lost profits theory also does not account for the fact that Con Edison could have purchased the High Impulse Elbow and the Cable Adapter products at issue from Chardon, which was an approved manufacturer for Con Edison at the relevant time. The jury was also presented with evidence by which they could find that T&B's lost profits are speculative, namely:

> (1) T&B utilized an overstated profit margin of nearly 60%, where the gross margins on T&B's actual profit & loss information relating to the products at issue ranges from 14–20% (Osborne 12/6/10 Aft. Sess. Tr. 57:9-63:4),

> (2) T&B's lost profits analysis utilized standard costs without any consideration of the large variances experienced by T&B (Id.),

> (3) T&B's failure to compete when faced with competition from Richards (Osborne 12/7/10 Tr. 7:4-18); see Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 180 (1979) (holding that lost profits are speculative where there is uncertainty resulting from inaction of plaintiffs), and

> (4) T&B's lost profits fail to account for a set-off from the profits T&B earned from sales of other products it made pursuant to its contract with Con Edison (Oliver 11/30/10 Aft. Sess. Tr. 17:5-18:1; Osborne 12/7/10 Tr. 9:11-10:9; Gallagher (Con Edison), 12/6/10 Morn. Sess. Tr. 120:20-121:24).

T&B recognizes that if the jury finds its lost profits theory too speculative, then an alternative theory of disgorgement of Richards' profits for the head start period would be appropriate. The disgorgement theory represents "an accounting of Defendants profits…for the time it saved by the misappropriation." Reinforced Molding Corp .v Gen. Elec. Co., 592 F. Supp. 1083, 1088 (W.D.Pa 1984).

Importantly, however, under a disgorgement theory the jury must apportion the contribution of the misappropriated information to the Defendants' profits. Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co., 225 U.S. 604, 614-15 (1912) (holding that disgorgement of defendant's profits requires apportionment of contribution of plaintiff's property); Univ. Computing, Co. v. Lykes–Youngstown Corp., 504 F.2d 518, 538 (5th Cir. 1974) ("If defendant enjoyed actual profits, a type of restitutionary remedy afforded the plaintiff-either recovering the full total of defendant's profits or some apportioned amount designed to correspond to the actual contribution the plaintiff's trade secret made in the defendant's commercial success.") This

Honorable Stanley R. Chesler
December 11, 2010
Page 3

measure of damages thus disgorges the benefit that Defendants received by the misappropriated information only. If Defendants' profits were wholly due to the misappropriation, then Defendants entire profits during that period of time may be appropriate. But this is a factual question for the jury.

Defendants have presented the jury with evidence regarding the independent development efforts of Richards. The jury has also been presented with evidence concerning the experience, skill and knowledge of the relevant Richards' employees involved in the design, development and manufacture of the products at issue (i.e., Messrs. Luzzi, Lungin, Bier and Bastos). In addition, the jury has been presented with evidence concerning the reputation of Richards and Luzzi with Con Edison. The jury could find that each of these factors also contributed to Defendants' profits. Moreover, evidence was presented by which the jury could conclude that certain of the Richards' products were independently developed. If the jury were to so conclude, then it must apportion the Defendants' profits on a product-by-product basis as well.

Based on the evidence presented, the jury may find it too difficult to apportion Defendants' profits. Thus, if the jury is to be charged under a disgorgement theory, then it must also be charged under a royalty theory of recovery in the event that they are unable to apportion the amount of Defendants' profits resulting from the misappropriation. <u>Molex, Inc. v. Nolen</u>, 759 F.2d 474, 479 (5th Cir. 1985) (holding trial court correctly instructed jury that it could award damages on a reasonable royalty theory in a case where defendant misappropriated trade secrets and confidential information caused plaintiff to lose a specific customer to defendant); <u>Univ. Computing, Co. v. Lykes-Youngstown Corp.</u>, 504 F.2d 518, 539 (5th Cir. 1974) ("Because the primary concern in most cases is to measure the value to the defendant of what he actually obtained from the plaintiff, the proper measure is to calculate what the parties would have agreed to as a fair price for licensing the defendant to put the trade secret to the use the defendant intended at the time the misappropriation took place.").

The reasonable royalty theory attempts to measure the benefits, profits, or advantage gained by the defendant's use of the information at issue when disgorgement of all the profits is inappropriate because of other contributions to defendant's profits. This is consistent with Third Circuit authority. <u>See</u> <u>Int'l Indus. v. Warren Petroleum Corp</u>, 248 F. 2d 696, 699 (3d Cir. 1957) ("The appropriate measure of damages, by analogy to patent infringement, is not what plaintiff lost, but rather the benefits, profits, or advantage gained by defendant in the use of the trade secret."); <u>see also</u> <u>Linkco, Inc. v. Fujitsu Ltd.</u>, 230 F. Supp. 2d 492, 503 (S.D.N.Y. 2002) (holding reasonable royalty is a viable alternative when plaintiff's lost profits and defendants actual gain cannot be easily computed).

Defendants' expert testified that the damages number he put forward for a one year head start was the lump sum royalty amount that the parties would have agreed to as a result of a hypothetical negotiation at the time the misappropriation began, i.e., a reasonable royalty. He also testified

Honorable Stanley R. Chesler
December 11, 2010
Page 4

that this was the advantage or benefit that Richards received from a one year head-start. Similarly, he provided the jury with a royalty-based damages number if the head start period was found to have been two years. His calculation was based on an analysis of how much Richards would have paid to T&B in order to get into the business sooner. Such testimony was outlined in Mr. Osborne's expert report, was not objected to by T&B, and supports a viable theory of damages which Defendants are entitled to present to the jury.

T&B now challenges Defendants' expert testimony as being solely a "lead time" valuation, which T&B contends is an improper legal theory under <u>Kilbarr Corp. v. Bus. Sys. Inc.</u>, 679 F. Supp. 422 (D.N.J. 1988).  <u>Kilbarr</u> does not hold that a lead time valuation is an improper measure of damages.  Quite the contrary, in <u>Kilbarr</u>, the Third Circuit twice recognized the lead time valuation theory as a viable measure of damages, both before and after the district court opinion to which Plaintiff refers.  In fact, in the mandate that led to that district court opinion, the Third Circuit stated that the lead time valuation was "an important defense in the damage assessment." <u>Remington Rand Corp. v. Bus. Sys., Inc.</u>, 830 F.2d 1260, 1272-73 (3d Cir. 1987). In a later appeal in the case, the Third Circuit again remanded the case with an instruction to the court to consider the lead time valuation defense in determining damages. <u>Kilbarr Corp. v. Bus. Sys., Inc.</u>, 990 F.2d 83, 85 (3d Cir. 1993).

Additionally, the district court's opinion in <u>Kilbarr</u> carries no weight here because <u>Kilbarr</u> is drastically inapposite on its facts. In <u>Kilbarr</u>, there was an actual misappropriation of the tangible property that embodied plaintiff's trade secrets (analogous to Richards taking the molds and presses away for T&B), which precluded plaintiffs from using their own property to compete on the market. <u>Kilbarr</u>, 679 F. Supp. at 426-27. Even more egregious, in <u>Kilbarr</u>, at the time of the decision, plaintiff continued to be precluded from entering the market because Defendants failed to return the tangible property that embodied the trade secrets despite multiple orders of the court to do so. <u>Id.</u> Under these egregious set of facts, the court found the lead time valuation defense was inappropriate.

Respectfully submitted,

/s/ *Steven B. Pokotilow*

Steven B. Pokotilow

cc:      Attorneys of Record (via email)

Arthur Grossman
David Ward
MANDELBAUM, SALSBURG,
LAZRIS & DISCENZA, P.C.
155 Prospect Avenue
West Orange, New Jersey 07052
Phone:  (973) 736-4600
Fax: (973) 736-4670

Steven B. Pokotilow
Charles E. Cantine
Jason M. Sobel
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Phone: (212) 806-5400
Fax: (212) 806-6666

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **THOMAS & BETTS CORPORATION** | : | |
| | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| v. | : | Civil Action No. 01 CV 4677 |
| | : | |
| **RICHARDS MANUFACTURING** | : | **Honorable Stanley R. Chesler** |
| **COMPANY et al. and GLENN LUZZI,** | : | |
| | : | |
| Defendants. | : | |
| **RICHARDS MANUFACTURING** | : | |
| **COMPANY at al. and GLENN LUZZI** | : | |
| | : | |
| v. | : | **DEFENDANTS PROPOSED** |
| | : | **POST TRIAL JURY INSTRUCTIONS** |
| | : | **Dated: October 29, 2010** |
| Counterplaintiffs, | : | |
| | : | |
| **THOMAS & BETTS CORPORATION** | :: | |
| | : | |
| Counterdefendant. | : | |

Table of Contents

1.    POST-TRIAL INSTRUCTIONS ..................................................................... 1
      1.1    DELIBERATIONS ...................................................................... 1
      1.2    INSTRUCTIONS APPLY TO EACH PARTY; ALL PERSONS EQUAL
      BEFORE THE LAW – ORGANIZATIONS ................................................ 4
      1.3    EVIDENCE ................................................................................ 5
      1.4    PREPONDERANCE OF THE EVIDENCE ................................. 7
      1.5    DIRECT AND CIRCUMSTANTIAL EVIDENCE ...................... 8
      1.6    OPINION TESTIMONY ............................................................ 9
      1.7    CREDIBILITY OF WITNESSES ........................................... 10
      1.8    DISCREPANCIES IN TESTIMONY ....................................... 11
      1.9    USE OF DEPOSITIONS AS EVIDENCE ................................. 13
      1.10   IMPEACHMENT INCONSISTENT STATEMENT OR CONDUCT ................ 14
      1.11   EFFECT OF PRIOR INCONSISTENT STATEMENTS OR CONDUCT .......... 15
      1.12   CHARTS AND SUMMARIES IN EVIDENCE ......................... 16
      1.13   BREACH OF LOYALTY ......................................................... 17
      1.14   ESSENTIAL ELEMENTS OF A MISAPPROPRIATION OF CONFIDENTIAL
      INFORMATION ............................................................................... 18
      1.15   PROTECTABLE CONFIDENTIAL INFORMATION ...................... 20
      1.16   CONFIDENTIAL RELATIONSHIP ........................................ 24
      1.17   MISAPPROPRIATION ........................................................... 25
      1.18   INDEPENDENT DEVELOPMENT AND REVERSE ENGINEERING ........... 27
      1.19   PRECAUTIONARY MEASURES ........................................... 28
      1.20   UNJUST ENRICHMENT ........................................................ 30
      1.21   DAMAGES — EFFECT OF INSTRUCTIONS ......................... 32
      1.22   DAMAGES – DUTY TO CONSIDER ALL RELEVANT FACTORS AND
      BURDEN ON PLAINTIFF TO SEPARATE LOSSES RESULTING FROM LAWFUL
      CONDUCT FROM THOSE RESULTING FROM UNLAWFUL CONDUCT .............. 33
      1.23   COMPENSATORY DAMAGES FOR MISAPPROPRIATION ......................... 34
      1.24   REASONABLE ROYALTY ..................................................... 37
      1.25   MITIGATION OF DAMAGES ................................................ 39
      1.26   COMPENSATORY DAMAGES FOR BREACH OF DUTY OF LOYALTY .... 41
      1.27   PROVISIONAL INSTRUCTION CONCERNING LOST PROFITS ................ 43
      1.28   DUTY TO DELIBERATE ........................................................ 46
2.    PUNITIVE-DAMAGES PHASE INSTRUCTIONS ........................................ 47
      2.1    PUNITIVE DAMAGES ........................................................... 47

i

1.  **POST-TRIAL INSTRUCTIONS**

    **1.1 DELIBERATIONS**[1]

When you retire to the jury room to deliberate, you may take with you these instructions and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, T&B has established its claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and

---

[1]  Model Civil Jury Instructions for the District Courts of the Third Circuit § 3.1 (2010) (modified) ("Third Circuit Model Civil Jury Instructions").

1

impartial consideration of all of the evidence with your fellow jurors.  Listen to each other

carefully.  In the course of your deliberations, you should feel free to re-examine your own views

and to change your opinion based upon the evidence.  But you should not give up your honest

convictions about the evidence just because of the opinions of your fellow jurors.  Nor should

you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each

other about the case.  During your deliberations, you must not communicate with or provide any

information to anyone by any means about this case.  You may not use any electronic device or

media, such as a cell phone, smart phone, like Blackberries or iPhones, or computer of any kind;

the internet, any internet service, or any text or instant messaging service like Twitter; or any

internet chat room, blog, website, or social networking service such as Facebook, MySpace,

LinkedIn, or YouTube, to communicate to anyone any information about this case or to conduct

any research about this case until I accept your verdict.

If you have any questions or messages for me, you must write them down on a piece of

paper, have the foreperson sign them, and give them to the jury officer.  The officer will give

them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what

you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your

votes.  For example, do not write down or tell anyone that a certain number is voting one way or

another.   Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror.  In order for you as a

jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.  Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

3

## 1.2 INSTRUCTIONS APPLY TO EACH PARTY; ALL PERSONS EQUAL BEFORE THE LAW – ORGANIZATIONS[2]

Unless I state otherwise, you should apply each instruction separately, individually, and equally to T&B, Mr. Luzzi and Richards.

This case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, stand equal before the law and are to be treated as equals.

---

[2]  K. O'Malley, J. Grenig, W. Lee, <u>Federal Jury Practice and Instructions, Civil</u> §§ 103.10, 103.12 (5th ed. 2000) (as modified and adapted for this case) ("Federal Jury Practice and Instructions").

4

### 1.3 EVIDENCE[3]

As I advised you in my preliminary instructions, the evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses;

2. Documents and other things received as exhibits;

3. Any facts that are stipulated--that is, formally agreed to by the parties; and

4. Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case;

2. Objections by lawyers.

3. Any testimony I tell you to disregard; and

4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

---

[3]  Third Cir. Model Civil Jury Instructions § 1.5.

NY 73036625

There are rules that control what can be received into evidence.  When a lawyer asked a question or offered an exhibit into evidence, and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected.  This simply means that the lawyer requested that I make a decision on a particular rule of evidence.  You should not be influenced by the fact that an objection was made.  Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection was sustained, ignore that question. If it was overruled, treat the answer like any other.  If you were instructed that some item of evidence was received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may have been ordered struck from the record and you were instructed to disregard that evidence.  Do not consider any testimony or other evidence that was struck or excluded.   Do not speculate about what a witness might have said or what an exhibit might have shown.

NY 73036625

## 1.4 PREPONDERANCE OF THE EVIDENCE[4]

Plaintiff T&B has the burden in a civil action, such as this, to prove every essential element of T&B's claims of breach of duty of loyalty, misappropriation, and unjust enrichment by a preponderance of the evidence.  If T&B should fail to establish any essential element of T&B's claim by a preponderance of the evidence you should find for Defendants Mr. Luzzi and/or Richards as to that claim.

Proving an element of claim by a preponderance of the evidence means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is south to be proved is more likely true than not true.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

As I mentioned before, you may have heard the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies to criminal cases.  It does not apply in this case and you should, therefore, put it out of your mind in considering whether a party has met their burden of proof in this case.

---

[4]  Federal Jury Practice and Instructions § 104.01.

7

## 1.5 DIRECT AND CIRCUMSTANTIAL EVIDENCE[5]

Generally speaking, there are two categories of evidence presented during a trial: "direct evidence" and "circumstantial evidence."

"Direct evidence" is direct proof of a fact, such as testimony by a witness who asserts or claims to have actual knowledge of a fact, or who testifies about what he or she actually said, heard, or did.

"Circumstantial or indirect evidence" is proof of one or more facts, or a chain of facts and circumstances, from which you could find the existence or non-existence of another fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence. You should consider both kinds of evidence, and you are required to find the facts in accordance with all the evidence in this case, both direct and circumstantial. You are to decide how much weight to give to any evidence.

---

[5]  Federal Jury Practice and Instructions §§ 101.42, 104.05.

NY 73036625

**1.6 OPINION TESTIMONY**[6]

You have heard testimony containing opinions from some witnesses. In weighing this opinion testimony, you may consider the witnesses qualifications, the reasons for opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinion testimony should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of a witness, you may consider any bias that the witness may have, including any bias that may arise from evidence that the witness has been or will be paid for reviewing the case and testifying or from evidence that the witness testifies regularly and makes a large portion of his income from testifying in court.

---

[6]  Third Circuit Model Civil Jury Instructions § 2.11.

## 1.7 CREDIBILITY OF WITNESSES[7]

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness' understanding and memory;

(3) the witness' manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness' testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[7] Third Cir. Model Civil Jury Instructions § 1.7.

10

## 1.8 DISCREPANCIES IN TESTIMONY[8]

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by the evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters.  Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

---

[8]  Federal Jury Practice and Instructions § 105.01.

11

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

12

## 1.9 USE OF DEPOSITIONS AS EVIDENCE[9]

During the trial, certain testimony was presented by way of deposition.  The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case.  The testimony of a witness, who for some reason is not present to testify from the witness stand, may be presented in writing under oath or on a videotape.  Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

---

[9]  Federal Jury Practice and Instructions § 105.02.

13

**1.10      IMPEACHMENT INCONSISTENT STATEMENT OR CONDUCT**[10]

A witness may be discredited or impeached by contradictory documentary or testimonial evidence or by evidence that at some other time the witness said or did something, or failed to say to do something, that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness as much or as little credibility as you think it deserves.  If a witness is shown knowingly to have testified falsely about any material matter, you have the right to distrust such witness' other testimony, and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done if it was done voluntarily and intentionally and not because of mistake or accident or some other innocent reason.

---

[10]  Federal Jury Practice and Instructions § 105.04.

14

### 1.11    EFFECT OF PRIOR INCONSISTENT STATEMENTS OR CONDUCT[11]

Evidence that a witness, who is not a party to this action, has said or done something at some other time while not under oath inconsistent with the witness' testimony at trial, may be considered for the sole purpose of judging the credibility of the witness.  However, such evidence may never be considered as evidence of proof of the truth of any such statement.

Where the witness is a party to the case, and by such statement or other conduct admits some fact or facts against the witness interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

An act or omission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

---

[11]  Federal Jury Practice and Instructions § 105.09.

## 1.12      CHARTS AND SUMMARIES IN EVIDENCE[12]

Each party has presented certain exhibits in the form of charts and summaries. I decided to admit these charts and summaries in addition to or in place of the underlying documents and things that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

---

[12]  Third Cir. Model Civil Jury Instructions § 2.7.

NY 73036625

### 1.13    BREACH OF LOYALTY[13]

You must determine whether T&B has proved by a preponderance of the evidence that Mr. Luzzi breached his duty of loyalty to T&B.  Loyalty from an employee to an employer consists of basic and common sense obligations.   An employee must not while employed act contrary to the employer's interest.  Also during, the period of employment, an employee has a duty not to compete with his employer.  Despite this rule, while still employed with T&B, Mr. Luzzi was entitled to make arrangements for new employment with a competitor such as Richards, or establish his own business in competition with T&B.

In order to establish that Mr. Luzzi breached his duty of loyalty to T&B, T&B must prove by a preponderance of the evidence that:

**ONE:**  Prior to January 15, 1999 and while still employed by T&B,

**TWO:** Mr. Luzzi did more than make arrangements for new employment with Richards and acted contrary to T&B interests by actively competing with T&B in the area of underground electrical connectors.

T&B must prove both of these factors by a preponderance of the evidence.  If you find that while Mr. Luzzi was employed by T&B, he only prepared for future employment, and did not (1) solicit customers for Richards prior to leaving T&B, or (2) take affirmative steps to injure T&B -- you must find that Mr. Luzzi did not breach his duty of loyalty to T&B.

---

[13]   Lamorte Burns & Co., Inc. v. Walters, 167 N.J. 285, 302-305 (2001); Platinum Mgmt., Inc. v. Dahms, 285 N.J. Super. 274, 303-305 (1995).

**1.14        ESSENTIAL ELEMENTS OF A MISAPPROPRIATION OF CONFIDENTIAL INFORMATION**[14]

You are to determine whether any confidential information has been misappropriated by Mr. Luzzi and/or Richards.  T&B claims that Mr. Luzzi and/or Richards misappropriated certain confidential information.  In order to establish misappropriation of confidential information, T&B has the burden of proving by a preponderance of the evidence that:

**ONE:**        the information it alleges was misappropriated is confidential and proprietary;

**TWO:**        the information was communicated in confidence by T&B to Mr. Luzzi;

**THREE:**        the information was disclosed by Mr. Luzzi in breach of that confidence;

**FOUR:**        the information was acquired by Richards with knowledge of Mr. Luzzi's breach of that confidence;

**FIVE:**        the information was used by Richards to the detriment of T&B; and

**SIX:**        T&B took precautions to maintain the confidentiality of the information it alleges to have been misappropriated.

Only wrongful use of confidential information disclosed in confidence gives rise to liability.  To find Mr. Luzzi and/or Richards liable for misappropriation of confidential information, you must find by the preponderance of the evidence that T&B had specific,

---

[14]  Federal Jury Practice and Instructions § 127.10; In re Target Indus., Inc., Bankruptcy No. 99-43997 (MBK), Adversary No. 01-03367 (MBK), 2008 WL 4186898 (Bankr. D.N.J. 2008), aff'd 2010 WL 2696844 (3d. Cir. Jul. 8, 2010) (citing Rohm & Hass Co. v. Adco Chem. Co., 689 F.2d 424, 429-30 (3d Cir. 1982) (applying New Jersey law));  Rycoline Products, Inc. v. Walsh, 334 N.J. Super. 62, 71 (App. Div. 2000); Merckle v. Johnson & Johnson, 961 F. Supp. 721, 730 (D.N.J. 1997); Thomas & Betts Corp. v. Richards Mfg. Co., Nos. 08-3117, 08-3269, slip op. p. 12, 342 F.App'x 754, 760 (3d Cir. 2009).

18

identifiable confidential and proprietary information that was acquired by Mr. Luzzi and Richards as a result of Mr. Luzzi's confidential relationship with T&B, that Mr. Luzzi disclosed the information to Richards in breach of his confidential relationship with T&B, that Richards acquired this information with knowledge of such breach, that Mr. Luzzi and Richards used the information in developing or making their competing products, and T&B took sufficient precautions to maintain the confidentiality of this information.

If you find that any one of these six elements have not been proved by T&B by a preponderance of the evidence, then you must find that Mr. Luzzi and Richards did not misappropriate T&B's confidential information.

### 1.15      PROTECTABLE CONFIDENTIAL INFORMATION

Under the first requirement for misappropriation of confidential information, you are to determine whether T&B has proved by a preponderance of the evidence that the information it alleges was misappropriated is in fact protectable confidential information.  Confidential information provided by an employer to its employee in the course of employment and for the sole purpose of furthering the employer's business interests is legally protectable confidential information. [15]

T&B must prove by a preponderance of the evidence that the information it alleges to have been misappropriated is protectable confidential information.  In determining whether T&B has met its burden of proving the information is protectable confidential information, you may consider, among other things, the following factors: [16]

1)   Whether the information was generally available to the public;

2)   Whether Mr. Luzzi would have been aware of the information if not for his employment with T&B;

3)   Whether the information gave Mr. Luzzi – and, by extension Richards – a competitive advantage in relation to T&B; and

4)   Whether Mr. Luzzi knew that T&B had an interest in protecting the information to preserve its own competitive advantage.

---

[15] Thomas & Betts Corp. v. Richards Mfg. Co., Nos. 08-3117, 08-3269, slip op. p. 10, 342 F.App'x 754, 759 (3d Cir. 2009).

[16] Id.

Your focus in considering these four factors is on the relationship between T&B and Mr. Luzzi, the expectations of T&B and Mr. Luzzi, and the intended use of the information.[17]

With respect to the first factor— whether the information is generally available to the public—you should consider that the items of confidential information argued by T&B may serve as the basis for a tort action despite the fact that many of the items of information, examined in isolation, constitute manufacturing techniques that are generally known in the industry.[18]

With respect to the third factor, in considering the competitive value of the information, you should consider that the competitive value of certain information may derive solely from its relation to other information, even when, taken in isolation, that information is neither novel nor unknown.

The following items, however, are not protectable confidential information:

1) Matters of general knowledge within the underground electrical industry;[19]

2) The knowledge, skill, or expertise that Mr. Luzzi brought with him when he joined T&B;[20]

---

[17] Id., Slip Op. at 11.

[18] Id., Slip Op. at 11.

[19] Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 33-34 (1971) ("matters of general knowledge within the industry may not be classified as … confidential information;" routine or trivial differences in practices and methods learned by an employee are not protectable); Forman Indus., Inc. v. Blake-Ward, 2008 WL 4191155, at *8 (N.J. Super. App. Div. Sept. 15, 2008)(citing Whitmyer); see also Laidlaw, Inc. v. Student Transp. of Am., 20 F. Supp. 2d. 727, 760 (D.N.J. 1998) ("employer … may not prevent an employee from using the general skills in an industry which have been built up over the employee's tenure"); Apollo Techs. Corp. v. Centrosphere Indus. Corp., 805 F. Supp. 1157, 1196 (D.N.J. 1992) ("skillful variations of general processes known to a particular trade are not trade secrets").

3)  General knowledge, skill, expertise or information that Mr. Luzzi learned or developed during the course of his employment with T&B;[21]

4)  Information and techniques that are readily observable and capable of becoming part of the acquired experience of an employee in the underground electrical connector industry[22]; and

5)  Routine or trivial differences in practices and methods that Mr. Luzzi learned while employed by T&B[23].

By way of example, once a technician knows when, where, how and at what rate to inject fuel additives into a particular boiler model, that information has become a part of the

---

[20] Coskey's T.V. & Radio Sales & Servs., Inc. v. Foti, 253 N.J. Super. 626, 637-8 (App. Div. 1992) ("What Foti brought to his employer, he should be able to take away.").

[21] Apollo, 805 F. Supp. at 1196 (citing Restatement (Second) of Agency § 395, comment b) (rule against disclosure of employer's information "does not apply to matters of common knowledge in the community nor to special skills which the employee has acquired because of his employment."); Ingersoll-Rand Co. v. Ciavatta, 110 N.J. 609, 635 (1988) ("knowledge, skill, expertise, and information acquired by an employee during his employment become part of the employee's person. … An employee can use those skills in any business … he may choose, including a competitive business with his former employer."); Laidlaw , 20 F. Supp. 2d. at 760 ("employer … may not prevent an employee from using the general skills in an industry which have been built up over the employee's tenure");  Raven  v. A. Klein & Co., Inc., 195 N.J. Super. 209, 213- 214 (App. Div. 1984) ("… confidential information cannot merely be the facility, skill or experience learned or developed during an employee's tenure with an employer"); Boost Co. v. Faunce, 17 N.J. Super. 458, 464 (App. Div. 1952) ("an employee, upon terminating his employment, may carry away and use the general skill or knowledge acquired during the course of the employment").

[22] Apollo, 805 F. Supp. at 1201 ("information and techniques that are readily observable and capable of becoming part of an employee's acquired experience;" providing examples from the restatement of agency regarding how skill acquired during employment become part of employee's person).

[23] Whitmyer Bros., , 58 N.J. at 33-34 (routine or trivial differences in practices and methods learned by an employee are not protectable)

22

technician's experience and skills.[24]  The skill with which an iron worker can determine the exact moment for pouring molten iron, and the skill of the glass molder in handling his tools, although the result of the employer's directions, become part of the personality of the employee that he is entitled to use freely in competition with his employer.[25]

If you determine that the information alleged to have been misappropriated was a matter of general knowledge in the underground electrical connector industry, or was within the knowledge, skill, or expertise of Mr. Luzzi, or was information and techniques that are readily observable and capable of becoming part of the acquired experience of an employee in the underground electrical connector industry, or that the information was a routine or trivial difference in practices and methods that Mr. Luzzi learned while employed by T&B, then you must find that the information that T&B alleges to have been misappropriated is not protectable confidential information.

Keep in mind that documents in and of themselves cannot be confidential, rather it is the information within a document that is capable of being confidential, if you decide that information meets the requirements that have just been explained.  Likewise, similarities between the parties' documents and products, evidence pertaining to Richards' use of the alleged confidential information, and evidence about what was or was not in the documents in Mr. Luzzi's possession have no bearing on the question of whether the alleged confidential information is protectable under New Jersey law.[26]

---

[24] Apollo, 805 F. Supp. at 1201.

[25] Id.

[26] D.I. 306 at 17 (acknowledging that similarities between the parties' documents and products, evidence pertaining to Richards' use of alleged confidential information, and evidence about

### 1.16      CONFIDENTIAL RELATIONSHIP[27]

With respect to second and third requirement of misappropriation, you must also determine whether T&B has proved by a preponderance of the evidence that the information it alleges to have been misappropriated was given to Mr. Luzzi as a result of a confidential relationship between Mr. Luzzi and T&B.

You must find that an express or implied agreement existed between T&B and Mr. Luzzi and that they both did or ought to have understood its terms.

However, a mere allegation of a confidential relationship is not enough.  T&B must prove the fact of such a relationship by a preponderance of the evidence.

If you find that the information T&B alleges to have been misappropriated was given to Mr. Luzzi as a result of a confidential relationship between Mr. Luzzi and T&B, then with respect to the fourth requirement of misappropriation, you must determine whether Richards acquired the information with knowledge of Mr. Luzzi's breach of that confidential relationship.

---

what was or was not in T&B documents in Luzzi's possession have no bearing on the question of whether the alleged confidential information is protectable under New Jersey law).

[27]  Federal Jury Practice and Instructions § 127.12.

NY 73036625

## 1.17      MISAPPROPRIATION[28]

If you decide that there was a confidential relationship between T&B and Mr. Luzzi, and that T&B disclosed protectable confidential information to Mr. Luzzi, and that Mr. Luzzi disclosed protectable information to Richards in breach of that confidential relationship, and that Richards acquired the information with knowledge of Mr. Luzzi's breach, then with respect to the fifth requirement of misappropriation, you must decide whether the information was actually misappropriated by Mr. Luzzi and Richards.

A misappropriation has occurred if Mr. Luzzi and Richards used the confidential information of T&B to make Richards' competing products. Mere conjecture or speculation as to their use is not sufficient. T&B must prove by a preponderance of the evidence that Mr. Luzzi and Richards used T&B's confidential information in making the competing products.

However, if the contribution made by T&B's confidential information is so slight that the Richards' product or process can be said to derive from other sources of information or from independent creation or development, T&B's confidential information has not been 'used' for purposes of imposing liability.

A mere showing of similarities between Richards and T&B's products or processes will not fulfill the T&B's requirement of proving use because Richards and Mr. Luzzi may have obtained the information from sources independent of T&B's information.

Even if T&B proves that Mr. Luzzi and Richards had access to T&B's information, or had access to it prior to developing a competitive line of underground connectors, this does not

---

[28]  Federal Jury Practice and Instructions § 127.13; Roger M. Milgrim, 4 Milgrim on Trade Secrets §§ 15.01[1][d], 15.01[1][d][vi] (2010); Duffy v. Charles Schwab & Co., Inc., 123 F. Supp. 2d 802, n.8 (D.N.J. 2000) (quoting Restatement Third, Unfair Competition § 40 cmt. c.)

mean that Mr. Luzzi and Richards misappropriated T&B's information.  Possession of the information without more is insufficient to prove misappropriation. Mr. Luzzi and Richards must have used T&B's confidential information to develop Richards' competing line of underground connectors.

### 1.18      INDEPENDENT DEVELOPMENT AND REVERSE
ENGINEERING

Richards and Mr. Luzzi contend that they independently developed  Richards' processes
and reverse engineered T&B's products.  There is nothing improper in reverse engineering a
competitor's product to create a competitive product. Because T&B's products are not covered
by a patent or copyright, it is permissible for anyone, even a competitor to copy T&B's products.
Thus anyone may acquire T&B's products and work backward to develop a competing product
and process for making those products. [29]

If you find that Richards and Mr. Luzzi have presented evidence that Richards
independently developed and/or reverse engineered the products at issue and process for making
them, then the burden shifts to T&B to prove that Richards and Mr. Luzzi did not independently
develop and/or reverse engineer the products at issue and process for making them. [30]  Extensive
evidence of trial and error in development efforts supports a finding of independent
development. [31]

---

[29]  Traffix Devices, Inc. v. Marketing Displays, Inc.,  532 U.S. 23, 29 (2001); Bonito Boats, Inc.
v. Thunder Craft Boats, Inc., 489 U.S. 141, 160 (1989); Schreyer v. Casco Products, 190 F.2d
921, 924 (2d Cir. 1951); Roboserve, Ltd. v. Tom's Foods, Inc., 940 F.2d 1441, 1455 (11th Cir.
1991) ("trade secret laws cannot be used to prohibit reverse engineering, whereby a party starts
with a known product and works backward to discern the process by which it was
manufactured."); TDS Healthcare Sys. Corp v. Humana Hosp. Illinois, Inc., 880 F. Supp. 1572,
1585 (N.D. Ga. 1995).

[30] Moore v. Kulicke & Soffa Inds., 318 F.3d 561, 563, 572 (3d Cir. 2003) ("it is necessary to
disprove independent development when raised-in order to meet the burden of proving the
element of use.").

[31] Heyman v. AR. Winarick, Inc., 207 F. Supp. 78, 82 (S.D.N.Y. 1962), aff'd, 325 F.2d 584 (2d
Cir. 1963) (finding that extensive evidence of trial and error in development efforts supports a
finding that a product was developed independently of any confidential information or trade
secret).

27

### 1.19      PRECAUTIONARY MEASURES[32]

With respect to the sixth element of misappropriation of confidential information, you must determine whether T&B proved by a preponderance of the evidence that it took sufficient precautions to maintain the confidentiality of the information it alleges to have been misappropriated.

In determining whether T&B took sufficient precautionary measures to preserve its confidential information, you may consider the following factors:

1)   whether the information at issue is provided to employees only when necessary;

2)   whether there are confidentiality agreements with the employees exposed to the information;

3)   whether employees who readily observed the information or techniques were notified that the specific information was confidential;

4)   whether employees are required to return documents received in connection with their employment, and were asked to return documents received in connection with their employment upon leaving;

5)   the type of information presented in promotional literature or disseminated to prospective customers;

---

[32] Rycoline Products, 334 N.J. Super. at 71(requiring precautionary measures be taken to afford protection to information); Merckle, 961 F. Supp. at 730 (same); Apollo Techs., 805 F. Supp. at 1201 (discussing precautionary measures that can be considered; holding information that was readily observable by employees was not sufficiently protected by mere requirement that employees sign confidentiality agreements);   In re Target Indus., 2010 WL 2696844, at *1 (citing Platinum Mgmt., 285 N.J. Super. at 294) (stating that information may be proprietary if it "is not publicly available and the company protects such information with restrictive covenants, such as confidentiality agreements or covenants not to compete."); Forest Labs., Inc. v. Lowey, 218 U.S.P.Q. 646, 657 (N.Y. Sup. Ct. 1982) (designating material as secret or with a confidential legend does not turn non-confidential information into confidential material).

6) the number of customers who are exposed to information about the alleged

confidential information;

7) the security measures taken or not taken at the plaintiff's physical plant(s); and

8) whether material is designated as confidential or with a confidential legend.

However you should note that merely designating material as confidential does

not turn non-confidential information into confidential material.

If you find that T&B did not take sufficient precautionary measures to preserve its

confidential information, you must find that Richards and Mr. Luzzi did not misappropriate

T&B's confidential information.

29

## 1.20      UNJUST ENRICHMENT[33]

You must determine whether T&B has proved by a preponderance of the evidence that Richards was unjustly enriched by profiting from the use of T&B's confidential information in the development of a competing line of connector products at the expense of T&B.

T&B must prove each of the following elements by a preponderance of the evidence:

**ONE:**          Richards received a benefit;

**TWO:**          Retention of the benefit by Richards would be unjust;

**THREE:**          A contractual type relationship existed between T&B and Richards at the time the alleged misappropriation occurred; and

**FOUR:**                Because of the contractual type relationship between Richards and T&B, T&B expected payment from Richards when the benefit was conferred.

Richards contends that it was not unjustly enriched because it did not misappropriate T&B's confidential information, it did not have a contractual type relationship with T&B, and that T&B never expected payment from Richards at the time the misappropriation was alleged to have occurred.

If you find that Richards did not misappropriate T&B's confidential information, then you must find that T&B has not proved that Richards was unjustly enriched.

If you find that there was no contractual type relationship between Richards and T&B, then you must find that T&B has not proved that Richards was unjustly enriched.

---

[33]  <u>Castro v. NYT Television</u>, 370 N.J. Super. 282, 299-300 (App. Div. 2004); <u>Duffy</u>, 123 F. Supp. 2d at 815.

30

If you find that T&B did not expect payment from Richards at the time the confidential information was misappropriated, then you must find that T&B has not proved that Richards was unjustly enriched.

31

## 1.21      DAMAGES — EFFECT OF INSTRUCTIONS[34]

I shall now instruct you on the law governing damages in the event you decide the issues of misappropriation or breach of duty of loyalty in favor of T&B.

The fact that I instruct you on damages should not be considered as suggesting any view of mine about which party is entitled to prevail in this case.  Instructions on damages are given for your guidance in the event you find that T&B is entitled to damages.  I am required to provide instructions on damages in all cases in which the trial includes a claim for damages.

T&B has the burden of establishing by a preponderance of the evidence each item of compensatory damages that it claims.

In this case T&B is seeking the following types of damages:

1.   Damages for breach of the duty of loyalty from Mr. Luzzi; and

2.   Damages for misappropriation of confidential information from both Mr. Luzzi and Richards.

---

[34]   NJ Model Jury Charge (Civil) 8.10A "Damages-Effect of Instructions, General" (December 1995).

**1.22     DAMAGES – DUTY TO CONSIDER ALL RELEVANT FACTORS AND BURDEN ON PLAINTIFF TO SEPARATE LOSSES RESULTING FROM LAWFUL CONDUCT FROM THOSE RESULTING FROM UNLAWFUL CONDUCT**

When determining the amount of damages, you must (1) take into account all factors that bear on T&B's losses; (2) distinguish losses that were caused by Defendants' alleged unlawful conduct of misappropriation from those that were caused by Defendants' lawful conduct such as independent development or reverse engineering; [35] and (3) include in a damages calculation only those losses for which Defendants can fairly be said to be responsible.

T&B has the burden of separating unlawful conduct from lawful conduct in calculating its damages.[36]

---

[35]  Coleman Motor Co. v. Chrysler Corp., 525 F.2d 1338, 1351-53 (3d Cir. 1975) (overturning jury verdict and ordering new trial when evidence showed that damage calculations were based in part on lawful competition by the defendant); Nebraska Plastics, Inc. v. Holland Colors Americas, Inc., 408 F.3d 410, 417 (8th Cir. 2005) (verdict cannot be based on expert's "calculation of future damages [that] failed to take into account a plethora of specific facts tending to show limits on the amount of defective fencing that would be the subject of future warranty claims").

[36]  Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 415-16 (7th Cir. 1992) (verdict cannot be based on expert testimony attributing one-third of lost sales revenue to unlawful competition where 95 percent of names on mailing list were commercially available; "[t]he expert should have tried to separate the damages that resulted from the lawful entry of a powerful competitor" from "the damages that resulted from particular forms of misconduct allegedly committed by that competitor"); Robert E. Hall & Victoria A. Lazear, Reference Guide on Estimation of Economic Losses in Damages Awards, in Federal Judicial Center, Reference Manual on Scientific Evidence 277, 307 (2d ed. 2000) ("If a damages analysis includes the effects not caused by the defendant, it is a defective analysis. It has not followed the standard format for damages, which, by its nature, isolates the effects of the harmful act on the plaintiff. The proper response is not to tell the expert to disaggregate, but rather to carry out a valid damages analysis that includes only damages, and not the effects of other events.").

33

## 1.23      COMPENSATORY DAMAGES FOR MISAPPROPRIATION[37]

If you should find by the preponderance of the evidence presented that Mr. Luzzi and/or Richards have misappropriated T&B's confidential information, you must then determine the amount of damages, if any, that T&B is entitled to receive.

The fact that I am instructing you on the subject of damages does not mean that T&B is or is not entitled to recover damages.  I am expressing no opinion one way or the other.  These instructions are only to guide you if you find from a preponderance of the evidence that T&B is entitled to recover damages.

T&B has the burden of establishing the amount of actual damages, if any, that it suffered as a result of Mr. Luzzi and/or Richards' alleged misappropriation of T&B's confidential information.  Damages must be determined with reasonable certainty from the evidence presented.  Although mathematical precision need not be shown, you are not to guess or speculate as to the amount damages.[38]

In the event you decide to award damages, you may only award an amount that would fairly compensate T&B for damages proximately caused by Mr. Luzzi and/or Richards' use of the T&B's confidential information.  In awarding damages you should award T&B an amount of

---

[37] Federal Jury Practice and Instructions,§ 127.14; see Am. Air Filter  Co. v. McNichol, 527 F.2d 1297, 1300-01 (3d Cir. 1975); Greenberg v. Croydon Plastics Co., 378 F. Supp. 806, 817 (E.D. Pa. 1974).

[38] Platinum Mgmt., 285 N.J. Super. at 308.

NY 73036625

damages that would fairly compensate T&B for the advantage the Defendants gained by reason of their use of the confidential information.[39]

In determining the advantage gained by Defendants, you may consider the head-start Defendants received or in other words "the acceleration of Defendants [development of products] due to the fact that [they] used confidential information,"[40] or the savings enjoyed by Defendants by reason of its for use of the confidential information,[41] or the amount of money the

---

[39] Int'l Indus. v. Warren Petroleum Corp, 248 F. 2d 696, 699 (3d Cir. 1957) ("The appropriate measure of damages, by analogy to patent infringement, is not what plaintiff lost, but rather the benefits, profits, or advantage gained by defendant in the use of the trade secret.")

[40] Midland-Ross Corp. v. Yokana, 293 F.2d 411, 413 (3d Cir. 1961) (stating that plaintiff may be entitled to damages for the head start received by use of confidential information; "But we think it is indicated that any skilled engineer could form a set of drawings or blueprints for himself if he had opportunity with the parts of the machine before him…If the plaintiff is entitled to damages for the acceleration of Yokana's plans due to the fact that he had the drawings and did not have to measure the completed machine."  "We think there is also an item to be considered which is whether by using the plaintiff's drawings and the like instead of making measurements themselves, defendants did not short-cut by improper use of plaintiff's material what they otherwise could have dug out through a more expensive, painful process. If all plaintiff's evidence in that respect should be true, we think that is an element also to be considered in determining what the defendant should be required to pay to the plaintiff.")

[41] Int'l Indus, 248 F.2d at 699 (3d Cir. 1957) (holding that damages or the advantage to defendant is determined by the cost savings by use of the misappropriated information; "The advantage enjoyed by defendant is to be measured by the standard of comparison method. This method contemplates the comparison of the cost…by means of the use of the trade secret with a method of accomplishing the same result which would have been open to defendant had he not appropriated the trade secret."); id. at 702 ("Where the thing appropriated or infringed is a process rather than a manufactured article, the *profits* are simply measured by the *savings* determined by the standard of comparison computation.")

parties would have agreed to as a fair price for the Defendants use of the confidential information at the time the misappropriation began.[42]

---

[42] Linkco, Inc. v. Fujitsu Ltd., 230 F. Supp. 2d 492, 503-04 (S.D.N.Y. 2002) (holding that an appropriate measure of damages in a claim of misappropriation of confidential information not rising to the level of a trade secret is reasonable royalty);

Univ. Computing, Co. v. Lykes-Youngstown Corp., 504 F.2d 518, 538 (5th Cir. 1974) ("Because the primary concern in most cases is to measure the value to the defendant of what he actually obtained from the plaintiff, the proper measure is to calculate what the parties would have agreed to as a fair price for licensing the defendant to put the trade secret to the use the defendant intended at the time the misappropriation took place.");

Linkco, 230 F. Supp. 2d at 503-04 ("Because plaintiff's work does not rise to the level of a trade secret, plaintiff is not entitled to the full reasonable royalty that would be paid for the use of a trade secret. Trade secret law places a premium on the value of secrecy, and creates exclusive rights in the holder of the secret.  Misappropriation of information cannot be used as an end-run around the secrecy requirement.")

LinkCo, Univ. Computing, and the Third Circuit's opinions in Midland Ross and International Industries, all compare the advantage gained by the use of the protectable information with the method of accomplishing the same result which would have been open to defendant had he not appropriated the information.

36

## 1.24      REASONABLE ROYALTY[43]

A royalty is a payment made to the owner of confidential information by a non-owner in exchange for rights to use the confidential information.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the owner of the confidential information (here T&B) and a company in the position of Richards taking place just before the misappropriation began.  You should assume that both parties to that negotiation were willing to enter into the license.

A reasonable royalty analysis attempts to measure the amount of money the parties would have agreed to as payment for the use of the information. In fixing the time of the hypothetical negotiation, you should use the date just before the use began.  By considering a hypothetical negotiation in which Richards is willing to license T&B's confidential information, and in which T&B is willing to license its confidential information, you should calculate what T&B and Richards would have agreed to as a fair price for licensing the confidential information at issue.

A reasonable royalty is not the amount that T&B "would have charged."  In determining a reasonable royalty, you are approximating what the parties would have agreed to, had they bargained in good faith.

---

[43] Linkco, 230 F. Supp. 2d at 503-04 (setting forth factors to consider in determining reasonable royalty for use of confidential information not rising to the level of a trade secret); (modified); Vermont Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142, 152 (2d Cir. 1996) ("[T]he amount that [Plaintiff] 'would have charged' is not the proper test for damages based on the theory of reasonable royalty."); Trio Process Corp. v. L. Goldstein's Sons, Inc., 533 F.2d 126, 130 (3d Cir 1976) (citing Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc., 446 F. 2d 295, 300 (2d Cir. ), cert. denied, 404 U.S. 870 (1971)) (rate of existing licensees should be considered in determining reasonable royalty rate); Metallurgical Indus. Inc. v. Fourtek, Inc., 790 F.2d 1195, 1208 (5th Cir. 1986) (evaluating factors for determining the reasonable royalty for information that had been appropriated includes the amount other licensees paid for the same information); AIPLA Model Patent Jury Instructions §§ 12.15, 12.16 (2008).

37

Richards contends that if liability is found and you find that T&B is entitled to damages, then a running royalty during the initial term of the ConEd contract, or a lump sum royalty based on the competitive advantage Richards received as a result of the alleged misappropriation of T&B confidential information, would be an appropriate amount of damages to compensate T&B.

In determining the appropriate reasonable royalty, you should evaluate how much of T&B's protectable information contributed to the overall design, development and manufacture of the Richards' products at issue.  You should also consider the following factors:

(1) the time spent developing the information,

(2) the money invested in developing the information,

(3) the labor invested in developing the information, and

(4) a reasonable portion of the expected profitability of the final product that incorporates the misappropriated information, measured at the time of a hypothetical negotiation for the sale or licensing of the property created by plaintiff's labor, skill and expenditures.

In determining this fourth factor, you must evaluate how much of the final Richards' products were based on T&B's protectable confidential information.

You should also consider the royalty rate of any existing licenses for use of the information in determining an appropriate reasonable royalty rate.

Keep in mind that T&B admits that its confidential information is not a trade secret. Therefore, the law requires you to award T&B less than a full reasonable royalty that would be paid for the use of a trade secret.

## 1.25       MITIGATION OF DAMAGES[44]

If you find that Mr. Luzzi and/or Richards are liable for any of T&B's claims and that damages resulted, you must also determine if T&B has made reasonable efforts to reduce or minimize its loss or damage.

Any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages – that is, to take advantage of any reasonable opportunity the person may have had under the circumstances to reduce or minimize the loss or damage.[45]

If you should find that Defendants have proved that T&B failed to seek out or take advantage of a business opportunity that was reasonably available to T&B under all the circumstances shown by the evidence, then you should reduce the amount of T&B's damages by the amount T&B could have reasonably realized if T&B had taken advantage of such an opportunity.[46]

---

[44]  Federal Jury Practice and Instructions § 129.50 (modified); Martin Marietta Corp. v. N.J. Nat'l Bank, 653 F.2d 779, 784- 85 (3d Cir. 1981) ("As a matter of common law, New Jersey places on tort victims a duty to mitigate damages…."); McGraw v. Johnson, 42 N.J. Super. 267, 274 (App. Div. 1956) (citing Restatement, Torts, § 918, p. 601 (1939)) ("[T]he requirement … plaintiffs mitigate damages prevails as much in …damages arising out of tort as … breach of contract."); NCH Corp. v. Broyles, 563 F. Supp. 142, 146 (E.D. La. 1983) (holding "plaintiff has … duty to mitigate its damages").

[45]  Federal Jury Practice and Instructions § 129.50 (modified); see also Martin Marietta Corp. v. N.J. Nat'l Bank, 653 F.2d 779, 784- 85 (3d Cir. 1981) ("As a matter of common law, New Jersey places on tort victims a duty to mitigate damages…."); McGraw v. Johnson, 42 N.J. Super. 267, 274 (App. Div. 1956) (citing Restatement, Torts, § 918, p. 601 (1939)) ("[T]he requirement … plaintiffs mitigate damages prevails as much in …damages arising out of tort as … breach of contract."); NCH Corp. v. Broyles, 563 F. Supp. 142, 146 (E.D. La. 1983) (holding "plaintiff has … duty to mitigate its damages").

[46]  Id.

Here, Defendants claim that T&B failed to minimize its damages by refusing to reduce its prices to ConEd in view of Richards' competitive bid.  Defendants contend that ConEd sought out Richards as a second source for underground connectors.  Defendants further contend ConEd and T&B had a non-exclusive contract, which enabled any competitor including Richards to submit a proposal for a contract. Defendants contend after Richards submitted a proposal providing lower prices than T&B, ConEd requested that T&B lower its price.  T&B, however, declined to reduce its price.  Defendants contend that as a result ConEd awarded the entire contract for underground connectors to Richards.

If you find that T&B failed to mitigate its damages by reducing its contract price to ConEd, then you should reduce the damages, if any, that you award to T&B by the amount of the forgone opportunity with ConEd.

### 1.26     COMPENSATORY DAMAGES FOR BREACH OF DUTY OF LOYALTY

If you should find by the preponderance of the evidence presented that Mr. Luzzi breached his duty of loyalty to T&B, you must then determine the amount of damages, if any, that T&B is entitled to receive from Mr. Luzzi.

The fact that I am instructing you on the subject of damages for breach of duty of loyalty does not mean that T&B is or is not entitled to recover damages for breach of duty of loyalty. I am expressing no opinion one way or the other. These instructions are only to guide you if you find from a fair preponderance of the evidence that T&B is entitled to recover damages for breach of duty of loyalty.

T&B's damages for breach of duty of loyalty are limited to the extent of their "actual injury" caused by the disloyalty, and the damages that occurred from Mr. Luzzi's disloyalty while he was still employed by T&B. [47]  T&B has the burden of establishing that Mr. Luzzi's alleged breach proximately caused the damages that it seeks. [48]

You may only award an amount that would fairly compensate T&B for damages proximately caused by Mr. Luzzi's breach of the duty of loyalty. There are two forms of damages (i) forfeiture of part of the disloyal employee's salary, or (ii) an award of part of the

---

[47]  Cameco, Inc. v. Gedicke, 157 N.J. 504, 518, 521, 522 (1999); Nelson v. Craner, No. SOM-L-1098-01, 2002 WL 32067029, at *7 (N.J. Super. Ct. April 5, 2002) (damages limited to the extent actual injury caused by disloyalty) (citing Joseph Toker, Inc v. Cohen, 67 N.J. Super. 68 (App. Div. 1961).

[48]  See, e.g., Lyle Carlstrom Assocs., Inc. v. Lyle, 2007 WL 114203, * 2 (N.J. Super. Ct. App. Div. Jan. 18, 2007); Federal Jury Practice and Instructions, § 120.60 (modified).

41

profits from the entity from whom the disloyal employee worked during the period that the

disloyal employee was still employed with his former employer.[49]

---

[49] <u>Cameco</u>, 157 N.J. at 522 ("If, on remand, the trial court concludes that Gedicke breached his duty of loyalty to Cameco, the court must then consider the appropriate remedy. Two forms of relief might be appropriate for such a breach: forfeiture of part of Gedicke's salary or an award of part of Newton's profits [during Gedicke's employment with Cameco].")

NY 73036625

## 1.27     PROVISIONAL INSTRUCTION CONCERNING LOST PROFITS[50]

[Should the court find that lost profits is an appropriate measure of damages, it should charge the jury as follows]

If you should find by the preponderance of the evidence presented that Mr. Luzzi and/or Richards have misappropriated T&B's confidential information, you must then determine the amount of damages, if any, that T&B is entitled to receive.

The fact that I am instructing you on the subject of damages does not mean that T&B is or is not entitled to recover damages.  I am expressing no opinion one way or the other.  These instructions are only to guide you if you find from a fair preponderance of the evidence that T&B is entitled to recover damages.

---

[50]  Federal Jury Practice and Instructions, § 127.14; Syncsort Inc. v. Innovative Routines Int'l, Civil Action No. 04-3623 (WHW), 2008 WL 1925304, *6 (D.N.J. April 30, 2008) (plaintiff must show "profits were lost because of the defendant's wrongful conduct") citing see MicroStrategy, Inc. v. Bus. Objects, S.A., 429 F.3d 1344, 1358 (Fed. Cir. 2005) (citations omitted); Gregory D'Alessandro Enters., Inc. v. Universal Mktg. Group LLC, 2008 WL 794468, at *5 (N.J. Super App. Div. March 27, 2008) (holding lack of proximate cause where plaintiff's former customer would not have resumed relationship with plaintiff even if former employee had not usurped opportunity); Lithuanian Commerce Corp. v. Sara Lee Hosiery, 23 F. Supp. 2d 509, 515-516 (D.N.J. 1998) (holding lost profits must be certain and fact finder may not speculate); Borough of Fort Lee v. Banque Nat'l de Paris, 311 N.J. Super. 280, 296 (App. Div. 1998) ("'Lost profits' signifies the difference between gross income and the costs or expenses which had to be expended to produce the income.  Proof of the relevant costs or expenses is not a matter of mitigation.  It is part of the damage case of the party seeking recovery for lost profits." (emphasis in original, citations omitted)); Electro-Miniatures Corp. v. Wendon Co., Inc., 771 F.2d 23, 27 (2d Cir. 1985) (plaintiff has "burden of proving its damages with reasonable certainty,"); Schreyer v. Casco Products Corp., 190 F.2d 921, 924 (2d Cir. 1951) (awarding profits only for the head start provided by confidential information); Linkco, 230 F. Supp. 2d at 503-4; Shamrock Techs., Inc. v. Medical Sterilization, Inc., 808 F. Supp. 932, 941 (E.D.N.Y. 1992); Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., 139 F.3d 1396 (11th Cir. 1998) (finding jury could not distinguish between losses suffered from improper use of confidential information and due to simple competition"); supra Final Instruction Nos. 1.18, 1.22, 1.25.

T&B has the burden of establishing the amount of actual damages, if any, that were suffered.  Damages must be determined with reasonable certainty from the evidence presented. Mathematical precision need not be shown, but you are not to guess or speculate as to damages.

You may only award an amount that would fairly compensate T&B for damages proximately caused by Mr. Luzzi and/or Richards' use of the confidential information.  You may consider in awarding such actual damages, T&B's lost profits.  In order to recover lost profits, T&B must prove with a reasonable certainty that its profits were lost as a result of Richards and/or Mr. Luzzi's misappropriation.   T&B must show that were it not for Defendants' misappropriation of its confidential information it would not have suffered the lost profits it requests.  T&B must provide evidence sufficient to estimate its lost profits with a reasonable degree of certainty.

In order for you to compute lost profits, T&B must provide evidence of profits, and present and future costs.  Lost profits is the difference between lost revenue or income, and the present costs and futures costs that would have been incurred in obtaining that lost revenue or income.  In other words, you should subtract present and future costs from T&B's lost revenue or income.

T&B, however, may not recover for profits that are remote, uncertain or speculative. You may not speculate about T&B's lost profits.  Thus, if T&B fails to provide you with its lost revenue, present or future costs, you may not speculate about these figures and you may not award T&B lost profits.  If you find that T&B's lost profits are not a direct result of Richards and/or Mr. Luzzi's misappropriation, then you may not award T&B lost profits.

In calculating T&B's lost profits, you should take into account the following:

44

1) How much of T&B's lost profits are directly attributable to the misappropriated confidential information in relation to the production and sale of the products at issue;

2) Whether T&B could have won the ConEd contract, in whole or in part, if it lowered its price to compete with Richards such that T&B's lost profits are not a direct result of Richards and/or Mr. Luzzi's misappropriation;

3) Whether any competitor could have reversed engineered and designed competing electrical connectors such that T&B may be entitled to only lost profits for the time it would take a competitor to develop competing products;

4) Whether T&B's loss of ConEd's business was simply the result of legal competition and not the misappropriation of T&B's confidential information.

Remember T&B is only entitled to lost profits that are directly attributable to Richards and Mr. Luzzi's misappropriation of confidential, and not for Richards and Mr. Luzzi's lawful conduct, such as independent development or reverse engineering of T&B's products.

45

### 1.28       DUTY TO DELIBERATE[51]

The verdict must represent the considered judgment of each of you.  In order to return a verdict, it is necessary that each juror agrees with it.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

---

[51]  Federal Jury Practice and Instructions § 106.01

46

2.   **PUNITIVE-DAMAGES PHASE INSTRUCTIONS**

**2.1 PUNITIVE DAMAGES**[52]

If you should find from the preponderance of the evidence that T&B is entitled to a verdict for actual or compensatory damages for breach of conduct, misappropriation of confidential information or unjust enrichment, you may consider whether an award of punitive damages should also be made.  T&B is not automatically entitled to punitive damages simply because you have found that one or more of Defendants engaged in wrongful conduct, or because you have awarded damages to compensate T&B for an injury Defendants inflicted on T&B.  You may award punitive damages only if T&B has proven certain matters that I am going to explain to you.

First, the purpose of punitive damages are different from the purpose of compensatory damages.  As I explained a moment ago, compensatory damages are intended to compensate T&B for an actual injury or loss that T&B suffered as a result of the proven misconduct by Defendants.  In contrast, punitive damages are intended to punish a wrongdoer and to deter the wrongdoer and others from similar wrongful conduct in the future.  Punitive damages are designed to require the wrongdoer to pay an amount of money that is sufficient to punish the wrongdoer for its conduct and to deter that wrongdoer from misconduct in the future.  Punitive damages are also designed to serve as an example to discourage anyone else from committing similar acts.

Now, I will explain the considerations that should govern your decision on whether punitive damages should be awarded to T&B in this case.

---

[52]  N.J.S.A. 2A:15-5:12; <u>Ginsberg v. Bistricer</u>, 2007 WL 987162, at *20 (N.J. Super. Ct. App. Div. April 4, 2007); Federal Jury Practice and Instructions §§ 104.02, 127.15 (modified).

47

To support an award of punitive damages, you must find that T&B has proved by, clear and convincing evidence, that the harm it suffered was the result of the actions of Mr. Luzzi and/or Richards, and that either (1) Mr. Luzzi and Richards' conduct was malicious, or (2) Mr. Luzzi and/or Richards acted in wanton and willful disregard of T&B's rights.

Thus, under this standard, to warrant punitive damages, the defendant's conduct must be particularly egregious. An act is malicious, if it is an evil minded act prompted or accompanied by ill will or such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.

An act is wanton and willful if it is a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission.

To award punitive damages, these factors must be proven by clear and convincing evidence. "Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue. Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether punitive damages are to be awarded, you should consider all relevant evidence, including but not limited to the following:

    (1) The likelihood, at the relevant time, that serious harm would arise from Mr. Luzzi and/or Richards' conduct;

    (2) Mr. Luzzi and/or Richards' awareness of reckless disregard of the likelihood that the serious harm at issue would arise from Mr. Luzzi and/or Richards' conduct;

(3) The conduct of Mr. Luzzi and/or Richards upon learning that its initial conduct would likely cause harm; and

(4) The duration of the conduct or any concealment of it by Mr. Luzzi and/or Richards.

If you decide that Mr. Luzzi and/or Richards have engaged in the type of wrongdoing that justifies punitive damages, you must then decide the amount of punitive damages that should be awarded. In determining the amount of punitive damages to award, you should consider all relevant evidence, including but not limited to the four factors that I previously mentioned to you in connection with your determination as to whether punitive damages should be awarded at all. In addition to those factors, you should also consider:

(1) The profitability of the misconduct to Mr. Luzzi and Richards

(2) When the misconduct was terminated; and

(3) The financial condition of Mr. Luzzi and Richards.

After considering all of these factors you should exercise your judgment and determine:

(1) Whether punitive damages should be awarded in this case; and

(2) The amount of punitive damages, if any, that Mr. Luzzi and/or Richards should pay.

49

Dated: October 29, 2010 (Revised Submitted December 14, 2010)

Respectfully submitted,

_____

Arthur D. Grossman
David A. Ward
MANDELBAUM, SALSBURG, GOLD, LAZRIS & DISCENZA, P.C.
155 Prospect Avenue
West Orange, New Jersey 07052
Phone:  (973) 736-4600
Fax: (973) 736-4670

Steven B. Pokotilow
Charles E. Cantine
Jason M. Sobel
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York  10038
Phone: (212) 806-5400
Fax: (212) 806-6666

Attorneys for Defendants

50